**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA )

vs. )      DOCKET NO.: 1:07cr169-01

RENE LILLICOTCH )

### DEFENDANT'S NCIA SENTENCING REPORT

| | |
|---|---|
| **Prepared for:** | Hon. Colleen Kollar-Kotelly<br>United States District Judge |
| **Submitted by:** | Charles Norman Shaffer<br>D.C. Bar No. 76117<br>P.O. Box 190<br>Damascus, Maryland 20872<br>(410) 489-4309<br>(410) 489 4691 (fax)<br>cnshaffer@comcast.net |

*Attorney for the Defendant*

### CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a copy of the foregoing Defendant's NCIA Sentencing Report with attachments was this 7th day of July, 2008 e-mailed to John Griffith, Esquire, Assistant United States Attorney, at john.griffith3@usdoj.gov, prosecuting attorney for the United States and to Kelli Griffin Cave, United States Probation Officer, at Kelli_Cave@dcp.uscourts.gov.

CHARLES NORMAN SHAFFER

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| -v- | ) | Docket No. 1:07cr169-01 |
| | ) | |
| **RENE LILLICOTCH** | ) | |

## DEFENDANT'S NCIA[1] SENTENCING REPORT

On July 25, 2007, Rene Lillicotch entered a guilty plea to one count of Conspiracy, in violation of 18 U.S.C. §371. While Mr. Lillicotch recognizes that there must be some consequences to his actions, it is contended that this Court should not sentence him to a period of incarceration, but instead impose an alternative sentence of a community corrections center or home confinement. Under the facts of this case, the Court has ample reason to find that the mandate of Title 18 USC §3553(a) supports a non-incarceratory sentence because, (1) Mr. Lillicotch has no prior criminal record, (2) Mr. Lillicotch has maintained a successful and reputable career in the HVAC, plumbing and welding trade as the owner of Precision Mechanical Service Ltd. (Precision Mechanical) for almost twenty years, (3) Mr. Lillicotch's actions in the instant offense were not violent in any manner, (4) Mr. Lillicotch has accepted full responsibility for his actions and has cooperated fully with the government's investigation, (5) Mr. Lillicotch has agreed to pay his proportionate share of restitution, and (6) Mr. Lillicotch's business would likely close if he is incarcerated, thereby causing a loss of jobs for his employees.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court determined that district courts must consider all of the sentencing factors under 18 U.S.C. §3553(a)(1)-(7) without giving mandatory weight to the sentencing guidelines under 18

---

[1]The National Center on Institutions and Alternatives (NCIA) is a nonprofit organization founded in 1977. Its Criminal Justice Services (CJS) provide services to defense attorneys, clients and courts throughout the country. CJS provides individualized sentencing evaluations and recommendations for persons who are facing incarceration and for those seeking relief. NCIA has provided services to over 15,000 clients in all 50 states. CJS services include sentencing reports, sentencing guideline assistance, capital case assistance, parole plans, research, and institutional designation/transfer. This report was prepared by Herbert J. Hoelter, Co-Founder and CEO, and Kerry Richmond, Case Developer in consultation with Mr. Lillicotch's attorney. For more information about NCIA, see www.ncianet.org

U.S.C. §3553(a)(4). Indeed, as mandated by Congress, the fundamental principle of sentencing is that a court *"shall impose a sentence sufficient, but not greater than necessary"* to meet specified sentencing goals, including the goal of just punishment. Section 3553(a)(2) states that such purposes of punishment are:

A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
B) to afford adequate deterrence to criminal conduct;
C) to protect the public from further crimes of the defendant; and
D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 3553(a) further directs sentencing courts to consider the following factors:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;
2) The kinds of sentences available;
3) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
4) The need to provide restitution to any victims of the offense.

Other statutory sections also give the district Court direction in sentencing. Under 18 U.S.C. §3582, imposition of a term of imprisonment is subject to the following limitation: "in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to recognize that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

In sum, in every case, a sentencing court must now consider **all** of the §3553(a) factors, not just the advisory guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in §3553(a), these statutory sentencing factors should generally trump the guidelines (*See United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989)).

Mr. Lillicotch takes full responsibility and accountability for his actions. While his involvement in the instant offense is inexcusable, it should not obscure the reputable life he has worked hard to build. Mr. Lillicotch has lived a respectable life where he is a devoted and trustworthy son, brother, husband, surrogate father, friend and employer. This Court has considerable leeway to impose a sentence below the advisory Guideline range that recognizes a number of mitigating circumstances presented here, notably Mr. Lillicotch's acceptance of responsibility, his cooperation with the government's

investigation and his agreement to pay the full amount of restitution. The Sentencing Reform Act's goals of sentencing can be met in this case by sentencing Mr. Lillicotch to probation conditioned upon either a period of time served in a community corrections center or a period of home confinement.

In the present case, Mr. Lillicotch submits that the following factors should be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

# I.
## THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

### A)    Nature and Circumstances of Offense

Mr. Lillicotch recognizes that the incidents for which he is charged were a complete and inappropriate deviation from his usual law-abiding behavior and for which he expresses complete and total remorse.

Mr. Lillicotch's involvement in the instant offense was limited to his role in inflating the HVAC and/or plumbing repair project costs for the contracts his company had with PM Services and dividing the inflated amounts between himself and his two co-defendants, Mr. William O'Shea and Mr. Charles Wehausen. When Mr. Lillicotch was approached by Mr. O'Shea and Mr. Wehausen in late 2000 about inflating the price for his services, Mr. Lillicotch was faced with a dilemma. PM Services, where Mr. O'Shea and Mr. Wehausen were employed, provided approximately 17-20% of the work to his company, Precision Mechanical. Mr. Lillicotch was concerned that not agreeing to this proposal would result in a significant drop in jobs for his company, potentially resulting in a downturn for his business and employee layoffs. As Mr. Lillicotch explains in his letter to the Court, "I panicked at the thought of losing a large customer and volume of work that I made the worst business and personal decision of my life."[2] However, this is not meant to excuse Mr. Lillicotch's involvement in the instant offense. As he himself explains, "While I made the decision to participate, Bill O'Shea and Tony Wehausen only gave me two options. Unfortunately, I chose the wrong option." As such, Mr. Lillicotch accepts complete responsibility for his actions and has expressed deep remorse for the impact that his involvement has had on his family, his friends and his employees.

Mr. Lillicotch's behavior is uncharacteristic of the way he has conducted himself and his business up until, and since, the instant offense and his remorse is evident to his

---

[2]Mr. Lillicotch's letter to the Court is attached at Appendix A.

family and friends. As his step-son, Bill, and his nephew, Jeffrey Lillicotch, explain in their letters to the Court, respectively:[3]

> It saddened me to learn about his current legal situation because I truly feel that Rene got caught up in something that wasn't his intention. Throughout this ordeal Rene has stayed strong, and has accepted complete responsibility for his actions. He blames no one but himself and fully understand the seriousness of his actions.

> \* \* \* \* \*

> I do hold him in high regard for both his character and integrity. So, I was absolutely shocked when he informed me of his circumstances. True to his character, though, he told me the things he had done, and he did not try to make excuses. He accepted the fact that he was responsible for his actions. He said that he had done a stupid thing.

Dave Hankins, an employee of Precision Mechanical Services, also speaks to Mr. Lillicotch's character in his letter, stating, "I know Rene and I know in my heart, [his involvement] was not done out of personal greed, but to keep his company going and his employees working."

### B)        History and Characteristics of the Defendant

#### 1.        Family Background in Brief

Rene Douglas Lillicotch (Rene) was born in Warren, Ohio on July 15, 1958 to Floyd and Marylou (Giddens) Lillicotch. Floyd and Marylou met in high school and married shortly thereafter. Rene's father worked as a boiler and pressure vessel inspector until his retirement in 1990. Mr. Lillicotch passed away in 1993 at the age of 65. Rene's mother stayed at home to raise her children and then devoted twenty years to her career as a nurse. At age 78, she is in moderate health and currently lives on her own in Ladysmith, Virginia. Rene is the youngest of five boys. His eldest brother, Robin, age 58, is a sales representative for ECO Laboratories and currently lives with his wife in Warrenton, Virginia. Robin has two grown sons, Chris and Jeffrey. Randall, age 56, is a retired director of engineering and lives in Indianapolis, Indiana and is divorced with two sons. Russ, age 54, is a nurse in Boyton Beach, Florida and is not married. Finally, Ryan, age 51, is also an HVAC contractor and lives with his wife in Annandale, Virginia. Rene

---

[3]These quotations and those that follow are taken from character letters submitted to the Court. These letters are attached at Appendix B.

describes growing up in a very close family and currently maintains a good relationship with his mother and brothers.

Rene currently lives in Manassas, Virginia with his wife, Peggy. His stepson, John ("Bill") Pearson, is the office manager at Precision Mechanical and lives nearby with his wife and two children.

### 2.     Early Childhood Years

Growing up, Rene had a happy childhood, spending much of his time with his parents and older brothers. Rene and his brothers were all born and raised in Warren, Ohio. However, when Rene was 6 years old, the family moved to Manassas, Virginia, where his father worked as a boiler and pressure vessel inspector. As a child, Rene and his brothers would go to church every Sunday with their parents, go on picnics and took advantage of local history, spending time sightseeing in Washington, DC and visiting the Manassas battlefields.

Robin Lillicotch, Rene's eldest brother, recalls the values that were instilled in him and his brothers from a young age:

> There was plenty of love in our close knit family. We knew from an early age the difference from right and wrong. We were to be part of the solution, not part of the problem in our upbringing. Our Father demanded that all of us finish high school, go to church [and] be home for dinner every night. We were taught to respect everyone and whatever career we decided on in life to be the best we could be.

As a child, Rene was always in good spirits and cheerful. His brother Robin remembers Rene as "the happiest child in the neighborhood…recognized for his singing at the top of his lungs while walking home from grade school." Rene was active in sports, playing on the swimming and wrestling teams in schools. He also enjoyed hunting and fishing.

Like his older brothers, Rene started working as soon as he was old enough to apply for a worker's permit so that he could make some extra money. While his parents made sure that Rene and his brothers had everything they needed, the children were expected to pay for any extra items they wanted. During high school, Rene worked as an orderly at a nursing home and then as a dishwasher at Prince William Hospital where his mother worked as a nurse. Rene's work ethic and responsibility, instilled by his father, were evident from an early age. For example, before Rene was even old enough to drive, he had saved up enough money to purchase his first car.

### C)    Professional Career

In 1977, Rene graduated from Stonewall Jackson High School and immediately set out to establish a career for himself. After high school, Rene held various jobs before deciding to start his own HVAC business. Prior to entering the boiler trade, he worked in construction for several years. Rene then worked for almost ten years at Capital Boiler Works and then American Boiler, learning the trade and gaining the skills and experience necessary to be successful in the field.

Rene's brother Randall believes that their father played an influential role in his and Rene's decision to pursue careers in the boiler trade:

> Our father was a Stationary Steam Engineer in Ohio, became a National Board Boiler Inspector and was a very respected Boiler Inspector for the State of Maryland….Rene and I proudly followed in our Father's foot steps and chose careers in the Boiler trade.

After working and gaining experience in the field, in 1989, Rene made the decision to start his own commercial HVAC company, Precision Mechanical Services, LTD. The success of Rene's company, which now employs over twenty people, did not happen overnight. Rene started his company with only $2,000 while continuing to work his full-time job during the day. His wife, Peggy, would type up proposals and invoices at night after working full-time and taking care of their son. In the evening, Rene would go out to various businesses and introduce himself. When he did contract a job, he would complete it himself after work.

Rene's stepson, Bill, recalls how hard Rene worked during those early years:

> Rene was always working hard to better our family life. He started his own business Precision Mechanical Services out of our two bedroom apartment all the while working his full time job that sometimes required him to work 60, 70 or even 80 hours a week. Through his hard work he has grown his business from a one man show to now employing 25 employees.

Slowly, Rene built up his company and eventually established himself in the field after about three to four years. Precision Mechanical has now been in business for almost 18 years and has over 20 full-time employees. However, to this day, Rene remains the only sales representative and it is through his contacts and efforts that the company obtains virtually all of its business. He continues to be intimately involved in all aspects of his business, working anywhere from 50 to 75 hours each week, and reviews 99% of the work orders that are sent out.

The hard work it took over the years to build his business does not go unnoticed by his friends and family members. His sister-in-law, Melanie Pearson, in her letter to the Court, writes:

> I have always admired Rene because he started with nothing and created a successful business through sheer perseverance and hard work. He always treats people fairly and with respect.

Rene's brother, Randall, also expresses admiration for his brother's work in his letter to the Court:

> I know the work Rene does, it is hard physical labor in usually unbearable conditions requiring critical trade skills to deal with potentially life threatening situations. Rene also possesses a tremendous amount of organizational abilities in order to juggle the logistics of his on going work schedules and constantly be out looking for new work to keep his crews employed.

Indeed, it is Rene's "strong work ethic" that family friend, Denise Blankenship, believes is "the foundation for his success and has directly attributed to longevity in his field."

In a customer-based business, such as Rene's, hard work is an integral component of success, as is integrity, professionalism and customer service. Rene not only possesses these qualities, but also instills them in his employees. It is these qualities that make people not only want to conduct business with Rene but to also work for him. As Jerry Miller, an employee at Precision Mechanical for 10 years, explains:

> Rene Lillicotch has always worked hard, been fair to everyone and family oriented. These are traits that helped me make the decision to join his company. Rene's customer base is from all walks of life, but yet he treats everyone with the same respect. Everyday I see Rene demonstrate professionalism and integrity to his customers, as well as the employees. The employees take the lead from these traits and carry them into the workplace.

As a small-business owner, Rene treats those who work for him as extended family members. He understands the importance of employment and a steady paycheck in people's lives and therefore does his best to be understanding when his employees are faced with hardship or unforeseen circumstances. In the letters written on Rene's behalf,

there are many such stories shared by Precision Mechanical employees. For example, Dennis Sellers writes:

> I met Rene Lillicotch in March 1996 and was hired by Precision Mechanical on March 12, 1996. I had been working for Rene for about a year and a half when I had a heart attack. I was not allowed to return to work for six months. While I was recovering Rene called me and asked if I would come back to work for him when the doctor released me. He said he would set me in a position that would not be too stressful or physically demanding. I accepted his offer and went back to work for him in October 1996….[Rene] always gave a little extra to the project in hand, demanded a high quality of workmanship and *was always there for his employees during their time of need* [emphasis added].

Sharon Zavalanski has also witnessed daily acts of kindness from Rene as Precision Mechanical's CPA:

> In the past when cash flow has been slow at Precision Mechanical, I have seen Mr. Lillicotch hold his paycheck for a few days or go without a paycheck for a week or two so that his employees would have their paychecks on time. Mr. Lillicotch has loaned out his personal vehicle to employees to get back and forth to work because theirs were down for repairs. I have known Mr. Lillicotch to give employees paid time off, without taking their vacation time or sick time, because of family emergencies. I have seen where Mr. Lillicotch will delay his own vacation because an employee needed time off.

The respect and compassion Rene shows towards his employees is perhaps one of the reasons why the quality of work done by Precision Mechanical is so high. Rene instills confidence in his employees, which gives them pride in what they do. Sharon Zavalanski goes on to explain that whenever a problem arises, "Mr. Lillicotch will listen…and lead his employees to the answer in a way that builds their own self-confidence."

As Dave Hankins, Field Supervisor at Precision Mechanical Services for 9 years, explains:

> In my 40 years plus of working in the plumbing and heating field, I have never met an owner that I respect as I do Mr. Rene Lillicotch. Rene always has a smile and

> handshake for all his workers. Even when reprimanding someone, he does it in a calm voice, then a pat on the back. His door is always open to anyone to talk about your personal problems or needs.
>
> Rene is a most generous and hard working employer. He is not only the best employer I have ever worked for, but I consider him my best friend as do most of his employees.

Larry Varner, in his letter to the Court, perhaps offers the best and most complete description of Rene:

> Mr. Lillicotch has always displayed a high degree of honesty, responsibility, and ambition. He has always been trustworthy and dependable in all of my dealings with him on a personal and professional level. He ensured that his workers reflected the honesty, hard-working attitude and integrity that he displayed during the time that I have known him. Mr. Lillicotch has always been known as a family loving type of person who would go out of his way to help other people…He was known to give people a second chance in regards to workers who did not make it with other companies or had other types of personal problems. Mr. Lillicotch has displayed over the years that I have known him *the epitome of a person who really cares about other people* and who *takes pride in professional workmanship, attitude, dependability, reliability and his sincereness in doing the right thing* in relationship to his business and his personal relationship to other individuals [emphasis added].

As a result of the integrity, professionalism and dependability Rene has established in his employees and company, he maintains a good relationship with his customers, many of whom have used his services repeatedly through the years. As Rene himself explains, "My business philosophy has always been that all HVAC, plumbing and welding contractors sell the same pipe and equipment, but it is good customer service that makes us stand out and be better than the competition." Rene estimates that 25% of his customers have used Precision Mechanical Services consistently for over five years.

For this reason, Precision Mechanical is viewed as an example of a successful small-business in the community, with fellow small-business owners often coming to Rene for advice and assistance. Daniel and Teresa McNeely, owners of DJMcNeely, Inc., own the business next door to Precision Mechanical and are indebted to Rene for the

support he has provided them over the years. As Daniel and Teresa McNeely explain in their respective letters to the Court:

> Rene has been instrumental in helping me with many aspects of running a small business, such as deciphering the Davis Bacon Act, correctly displaying employee information on a bulletin board, and other details overlooked by less professional businesses. I say this with utmost sincerity, Rene has always been a true professional, and has always gone out of his way to help me.
>
> ...As small business owners, Teresa and I have had our share of problems to contend with, be it employee related, or client related. So we look closely at how other companies operate. Precision is really quite a model of efficiency. But it's a team effort. My wife and I aspire to the level of professionalism and efficiency we see in Precision.

* * * * *

> The first person we met when we began our business in this location was Rene Lillicotch, founder of Precision Mechanical. Rene began to guide and assist us immediately. He extended friendship and business acumen from the first. He began to give us work and referrals right from the start. Indeed, one of our first payments for services rendered was from him.

Through Rene's hard work, he has "taken his company from a two-man operation to one of the larger mechanical contractors around" and has created a business which reflects his values, respect for others, and commitment.

### D)    Devotion to Family, Friends and Community

Above all else, Rene is characterized as "the epitome of the family man," deeply committed to those he cares about. As Rene's niece, Jacqueline, explains, Rene "is a stable, upstanding, kind, considerate and loving person…He is generous to a fault when it comes to his family."

Rene Lillicotch met his wife, Peggy Pearson, at a friend's wedding in 1980. Coincidentally, Rene and Peggy were neighbors growing up in Manassas. Rene and Peggy dated for seven years before they married in 1987. When they first met, Peggy had a nine year old son, Bill, from a previous relationship. While their relationship was

tenuous early on, Rene devoted himself wholeheartedly to being a father figure to Bill. As Bill explains in his letter to the Court:

> Growing up, Rene never treated me like his stepson but rather as his son, always introducing me as such and this would always make me feel proud because my natural father was never involved in my life. He would take the time to play football outside with me and my friends or take me fishing and camping even though his work schedule would keep him busy all week. I grew up with my single working mom who all I ever wanted was for her to be happy and someday find a man who would be a good husband to her. Well, I can honestly say that I couldn't have asked for a better husband for my mother than Rene. Rene cares for and loves my mother with all his heart and for that alone he has my respect.

Family and friends are the most important thing to Rene and he and his wife spend most of their free time either at their nieces' and nephews' sporting events or socializing with those closest to them. Despite hectic work schedules, Rene and his wife always make an effort to spend quality time with loved ones. As Rene's sisters-in-law, Melanie and Debra, explain, respectively:

> Every holiday is spent at Rene and Peggy's house. They have created a loving and fun home for us all to be able to take our children and spend memorable times together. Rene is present at our children's sports and school events and is a positive male role model in our son's lives.
>
> * * * * *
>
> Rene is more than family, he is a best friend, someone you know you can always count on, you could never ask too much of him. His happy caring outlook on life is so refreshing and unusual from most. Most of us are consumed with our daily work, home and personal lives and tend to focus on our stress, workloads and what is next, we forget the true meaning of life, where Rene lives it and breathes it. I honestly believe I am a better person for having known Rene.

Rene also has a long-standing tradition with his mother, who lives approximately an hour and a half away. Every Sunday, he drives out to visit her and take her out to breakfast. Once a year, they take a vacation together, most often visiting family. As

Rene's sister-in-law, Debra, explains, "[his mother] really is so very close to Rene and depends on him as a best friend, as a son and spiritually…The bond and love between them should be envied by any mother."

Rene often goes out of his way for other people, engaging in small acts of kindness to make someone's day a little brighter or easier. His older brother, Randall, and close friend, Michael Patrick Hogan, recall specific instances in their respective letters to the Court:

> [When] Rene and our Mother came to visit me last year, he noticed that I was mowing my 2+ acre yard with a push mower. Knowing that I was on a limited income and in poor health, Rene went home and arranged to have Lowe's Hardware Store deliver a riding law mower to my house, *just because he cared* [emphasis added]. I think of him every time I mow the lawn.

> * * * * *

> Rene has been around through my best and worst of times. Fifteen years ago, Rene gave me a place to live when I was out of a job and homeless. Rene has helped many of our friends in the same kind of way. He has been a good loyal friend.

Rene is always willing to help out, whether it is helping someone move or offering to haul debris with his truck. As his sister-in-law, Pamela, explains, Rene has "always had a big heart…it is just his nature to be generous and giving." His other sister-in-law, Karen, echoes that sentiment, "He has the kindest heart imaginable."

Consistent with Rene's character, his charitable donations are also to local organizations and causes in his community. He regularly donates money to neighborhood and school fundraisers and to the fire rescue and police funds. It is important to Rene to give back to the community.

## II.
### THE NEED FOR THE SENTENCE IMPOSED TO PROMOTE CERTAIN STATUTORY OBJECTIVES

The Court must consider the need for the sentence imposed, bearing in mind the four purposes of sentencing, just punishment, adequate deterrence, incapacitation and rehabilitation. *See* §3553(a)(2)(A)-(D).

Mr. Lillicotch recognizes that there must be some penalty associated with his actions. He has accepted responsibility and shown genuine remorse. The shame that he has experienced as a result of his actions is evident. However, a prison sentence is simply not necessary to deter him from committing new crimes, or to protect the public from future transgressions. *See*, Gall v. United States, 128 S. Ct. 586, 602 (2008)(upholding probationary sentence given a drug defendant whose Guidelines were 30-37 months imprisonment, where "imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts. *See*, 18 U.S.C. 3553(a)(2)(B),(C)"). Nor is a prison sentence necessary to serve the needs of just punishment or general deterrence. When the purposes of sentencing do not require imprisonment, the Court can and should vary from the advisory Guidelines range. The Court may properly consider the defendant's age, lack of criminal history, personal and family circumstances and his post-offense conduct as warranting a substantial variance from what the Guidelines would otherwise suggest. Cf., Gall, 128 S. Ct. 586 (variance and probation warranted by considerations of defendant's young age at the time, his lack of significant criminal history, and his post-offense conduct showing no risk of return to criminal conduct and no danger to society). Mr. Lillicotch will be severely and justly punished by the requirement that he pay his proportionate share of the restitution, the shame and reprobation which his misconduct has brought upon him and the imposition of an alternative sentence, such as house arrest or community confinement.

## III.
### THE KINDS OF SENTENCES AVAILABLE

In *Booker*, the Supreme Court severed and excised from 18 U.S.C. §3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. *Booker,* 125 S. Ct. at 756. This renders the sentencing guidelines advisory. *Id.*

# IV.
## THE SENTENCING GUIDELINES PROVISIONS

Mr. Lillicotch agrees that the federal sentencing Guidelines articulated in the Pre-Sentence Investigation Report are correctly calculated. However, in this case we submit that there are circumstances warranting a departure from or variance from those Guidelines. Specifically, a downward departure and/or variance from Mr. Lillicotch's advisory Guideline range is warranted for the following reason:

**A)    Courts Have Taken into Consideration the Extraordinary Effect that a Defendant's Incarceration Would Have on a Business, Causing the Loss of Jobs of Innocent Employees**

Mr. Lillicotch has operated Precision Mechanical. for approximately 19 years. Mr. Lillicotch started the company on his own and is now Senior Sales Representative, having withdrawn himself as President of the company, a title which has now been assumed by his wife. Mr. Lillicotch currently works 50-55 hours per week, or more as needed, meeting with established customers and obtaining new ones, assessing potential jobs and writing proposals, meeting with inspectors and performing final quality control walk-throughs. He is currently the only person at Precision Mechanical qualified to bid potential jobs. In addition, the fact that Precision Mechanical has so many loyal customers is directly the result of the relationships that Mr. Lillicotch himself has built over the years. He is deeply concerned that if he must leave his job, as result of incarceration, the business will not be able to withstand his absence. This is because of the essential roles he performs for the business development, contract bidding and job performance. No other Precision Mechanical employee has the technical expertise and broad understanding of the business to perform these functions. Without a downward departure or variance, there is a real prospect that all of the 22 employees at Precision Mechanical, including Rene's wife, stepson and sister-in-law will most likely suffer the loss of their current means of livelihood.

Precision Mechanical currently employs 22 individuals, the majority of whom have worked there for over five years. His employees all depend on their jobs at Precision Mechanical to support their families, which is evident given the additional support that Rene provides to his employees if needed. This has deeply troubled Rene as his employees were completely ignorant of his involvement in the fraudulent government contracts scheme. Therefore, we respectfully request that the Court downwardly depart from and/or grant a variance of the Guideline range due to the extraordinary adverse effect that his incarceration would have on Precision Mechanical, and its innocent employees (*See U.S. v. Mulikowsky*, 65 F.3d 4 (2d Cir. 1995) (the high probability that business run by an antitrust offender would go under if he was incarcerated and the resulting hardship on 100 employees of those business justified downward departure of one level from 11 to 10 authorizing probation); *U.S. v. Olbres*, 99 F. 3d 28 (1st Cir. 1996) (guidelines do not prohibit departure on grounds that incarceration of defendant will

cause job losses to his employees; case remanded to determine if extent of loss outside the heartland of such cases); *U.S. v. Kloda*, 133 F. Supp.2d 345 (S.D.N.Y. 2001) (in business tax fraud case, one-level departure granted in part because of "the needs of [defendant's] business and employees")).


## V.
### THE NEED TO AVOID UNWARRANTED DISPARITIES

The need to avoid unwarranted disparities is not applicable in this case due to the fact that Mr. Lillicotch is the first of co-defendants to be sentenced.


## VI.
### THE NEED TO PROVIDE RESTITUTION TO ANY VICTIMS OF THE OFFENSE

As the Pre-Sentence Investigation Report indicated, and as previously articulated in this Memorandum, Mr. Lillicotch has agreed to pay his proportionate share of the restitution owed to the General Services Administration.


## VII.
### SENTENCING RECOMMENDATION

Section §3553(a) mandates that the Court, when sentencing a defendant, impose a sentence "sufficient, but not greater than necessary" to satisfy the goals of sentencing. In addition, Section §3553(a)'s requirement that the sentence adequately protect the public and provide a general and specific deterrent effect clearly does not require a term of imprisonment. In fact, it should always be the goal of sentencing to prevent unnecessary incarceration and to limit prison sentences to those individuals who pose the greatest risk to society. As Norval Morris argues, when determining punishment, "the least restrictive (punitive) sentence necessary to achieve defined social purposes should be imposed."[4] In addition, proportionality is essential because if a punishment is too severe, it may have little, or an unintended, impact on the individual.[5]

Moreover, separate and apart from the Guidelines, application of the sentencing factors set forth in Title 18 U.S.C. §3553(a) merit an alternative sentence. Specifically, there are several factors warranting an alternative sentence for Mr. Lillicotch which include:

   ♦   This is Mr. Lillicotch's first offense;

---

[4] Morris, Norval (1974). *The Future of Imprisonment*. Chicago: University of Chicago Press, p. 59.
[5] See Cesear Beccaria (1764). *Of Crimes and Punishments*.

♦ Prior to this offense, he had lived his entire adult life as a respectful and trustworthy professional, committed and devoted to his family and friends; and

♦ He committed the offense because of the fear of loss of Precision Mechanical's largest recurring customer.

These factors, together with his genuine remorse provide sufficient reassurance that he will avoid future involvement in criminal activity.

Given these factors, we respectfully recommend that probation conditioned upon a term of home confinement or placement in a community corrections center would be sufficient but not greater than necessary to satisfy section 3553(a) and fulfill the purposes of sentencing, while also allowing Mr. Lillicotch to continue to play a his vital role in the daily operations of Precision Mechanical.

**A)    A Sentence of Home Confinement or Placement in a Community Corrections Center is Sufficiently Punitive**

**1.    Home Confinement**

In fashioning an individualized sentence in this case, we respectfully request that the Court consider imposing a sentence of home confinement. A sentence of home confinement is not an insignificant penalty. Home confinement is defined by the United States Sentencing Guidelines as:

> A program of confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office. When an order of home detention is imposed, the defendant is required to be in his place of residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs, and such other times as may be specifically authorized.[6]

Home confinement in the Federal system "ranges from a simple nighttime curfew to a 24-hour-a-day 'lock-down' home incarceration."[7] The extent to which individuals are permitted to leave their residence is determined on a case-by-case basis, depending on the

---

[6] U.S.S.G. §5F1.2, Application Note 1.
[7] Darren Gowen, "Overview of the Federal Home Confinement Program," *Federal Probation*, Page 11 (December 2000).

goals of supervision and the orders of the court.[8] If the Court determines that the "amenities available in the residence of a defendant would cause home detention not to be sufficiently punitive," it is permitted to "limit the amenities available."[9]

State and federal supervisory agencies have used electronic monitoring in the form of radio frequency monitoring for over 20 years. As the Court is likely aware, radio frequency monitoring entails an individual wearing an ankle bracelet transmitter that sends digital signals to a stationary receiver unit, usually in the monitored party's home and/or place of employment, which is attached to a telephone line. Because the receiver unit is stationery, supervising agents establish prescribed times when a defendant must be within the area of the receiver (150 to 200 feet) to confirm compliance. If the defendant fails to be within the area at the designated time, a breach is recorded and monitoring personnel are notified, either as the infraction is occurring or through daily or weekly reports.

Over the past two decades, home detention has gained acceptance in the Federal criminal justice community as a credible sanction and alternative to incarceration.[10] Judges have imposed home confinement more frequently as they have "learned more about what it offers" and discovered its cost effectiveness.[11] Only recently has research begun to examine the effectiveness of community based sanctions such as home detention. In 2000, Robert Stanz and Richard Tewksbury evaluated the Jefferson County Home Incarceration Program in Kentucky.[12] The authors conducted a five year follow up study of 2,649 offenders who had participated in the program in 1990. While the majority of offenders (85%) successfully completed the program, several factors were found to increase the likelihood of success. For example, those offenders who were older, and from less criminogenic neighborhoods were more likely to successfully complete the period of supervision. In addition, research has found that offenders who are under electronic monitoring are less likely to commit new offenses than comparable offenders under different forms of supervision.[13]

Criminal justice practitioners have also long advocated using home confinement to help relieve prison and jail overcrowding on both the state and federal level.[14] Robert

---

[8] *Id.*

[9] U.S.S.G. §5F1.2, Application Note 2.

[10] Gowen at 12.

[11] Gowen at 11.

[12] Stanz, R. and R. Tewksbury (2000). Predictors of success and recidivism in a home incarceration program. *The Prison Journal*. 80: 326-344.

[13] See also Bonta, J., S. Wallace-Capretta and J. Rooney (2000). A quasi-experimental evaluation of an intensive rehabilitation supervision program. *Criminal Justice and Behavior* 27: 312-330; Courtright, K., B.L. Berg and R. Mutchnick (1997). The cost effectiveness of using house arrest with electronic monitoring for drunk drivers. *Federal Probation* 61:19-22; Courtright, K., B.L. Berg and R. Mutchnick (2000). Rehabilitation in the new machine? *International Journal of Offender Therapy and Comparative Criminology* 44: 293-311.

[14] Evaluating the use of home confinement by state and federal courts, the Federal Judicial Center reported:

*Defendant's NCIA Sentencing Report*                                                          *Page 18*

N. Altman, Probation Administrator, Administrative Office of the Courts (AOC), and Robert E. Murray, Senior Probation Officer (retired), from the Western District of Washington, advocated increased use of home confinement based, in part, on AOC figures, which show that **less than two percent (2%) of individuals under home confinement commit new crimes**.[15] They also rely on savings calculations estimating that in fiscal year 1996, the federal government would have spent between $23 and $42 million more for prison/halfway house detention had home confinement not existed.

### 2.    Community Corrections Center

A sentence in a Community Corrections Center (CCC) would be a punitive and burdensome measure for Mr. Lillicotch. Offenders directly sentenced to CCC's (as opposed to those serving a period of pre-release custody following a term in a traditional prison) are "placed in the most restrictive component of the CCC and have limited access to the community." USDOJ-FBOP, *A Judicial Guide to the Federal Bureau of Prisons*, p. 14 (2000 ed.). Upon surrender, each new CCC resident is sequestered for 24-to-48 hours, during which time they are not permitted to leave the facility, even to work. During orientation, staff assigns a room and provides instruction regarding the facility's rules and procedures. Afterward, each offender directly committed to a CCC is restricted to the facility "except for employment, program needs and community service ordered by the Court…Passes, furloughs or other absences from the facility require advance approval of the [Community Corrections Manager]." USDOJ-FBOP, *Community Corrections Center Statement of Work*, p. 42 (2000 ed.) Only "pre-release offenders" (those not committed by the Court) may be absent from the CCC for "social purposes." *Id*. at 40.

Security and accountability are the most important goals of a CCC. The facility is required to "have a comprehensive offender accountability program that ensures every offender is accounted for" and must "be able to locate and verify the whereabouts of offenders at all times." *Id*. at 39. The CCC must "contact the offender either telephonically or in person at random times, at work, home or authorized destination to maintain accountability throughout the sign-out time(s). This should occur at least twice a day. The intent is to set a frequency that ensures accountability." *Id*.

---

> Interviews with offenders under home confinement confirm that it can be a very punishing experience. Some have refused to participate in a home confinement program, once they learned of the strict rules, because they felt it would be easier to spend time in jail.

Paul J. Hofer and Barbara S. Meirerhoefer, *Home Confinement: An Evolving Sanction in the Federal Criminal Justice System*, p. 46 (Federal Judicial Center 1987); *see also* Joan Petersilia, "Exploring the Option of House Arrest," *Federal Probation*, 50-55 (June 1986); Ronald P. Corbett and Ellsworth A.L. Fersch, "Home as Prison: The Use of House Arrest," *Federal Probation*, p. 15 (March 1984).

[15] "Variety on the Job: Special Skills, Special Duties in Federal Probation – Home Confinement: A 90s Approach to Community Supervision," *Federal Probation*, p. 32 (March 1997) (emphasis added); *see also* R. Altman, "Electronic Monitoring of Offenders: A Sentencing Alternative," *The Third Branch* (December 1991).

Inmates must always check in or out as approved and never miss a check-in or phone check. If an inmate does not abide by the rigorous check-in requirements, he risks disciplinary action and incarceration in a traditional prison. In addition to sign-in sheets, the CCC must maintain a "log sheet" in each offender's specific file in order to "provide a chronological record of the offender's movement." *Id.* at 40. Offender monitoring, particularly during evening and night hours, "serves to protect offenders, staff, and the public." *Id.* at 39.

Inmates in a CCC are eligible for home visits (i.e., passes to leave the CCC from 6 p.m. Friday to 9 p.m. Sunday). Although halfway house residents do become eligible for home visits from Friday night to Sunday night, those under the corrections component—that is, those directly committed to the CCC, as Mr. Lillicotch would be— are not eligible for 30 days. Discretion as to whether to grant a resident this privilege afterward rests with the BOP's Community Corrections Office. During home visits, inmates are required to remain at their residence at all times, except to attend to an approved itinerary of chores and duties submitted to staff prior to the weekend. Saturday evening excursions are rarely approved. CCC staff regularly monitor those using weekend passes by placing random calls to the residence.

## VIII.
### CONCLUSION

Mr. Lillicotch's acceptance of responsibility, his cooperation with the Government in regard to the instant offense, his agreement to pay his proportionate share of restitution, his upstanding personal and professional background, and the likely loss of employment for 22 innocent employees of Precision Mechanical provide sufficient justification for a departure under the Guidelines as well as a variance under §3553(a). The Court has ample authority post-*Booker* to fashion a non-Guidelines sentence. The Court should exercise its discretion and impose a sentence of probation with any conditions the Court deems suitable. Such a sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

# APPENDIX A

*Letter from Rene D. Lillicotch*

June 18, 2008


The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Ave., NW
Washington, DC 20001

Dear Judge Kollar-Kotelly,

I am Rene' D. Lillicotch, the defendant. This letter to you is because I used extremely poor judgment and allowed myself to get involved with two individuals and defrauded the United States Government. Our activities consisted of inflating HVAC and/or plumbing repair project costs and dividing the inflated amounts by thirds, one third to Bill O'Shea, one third to Tony Wehausen, and the final third to me. Bill O'Shea and Tony Wehausen were employees of P.M. Services and had the maintenance contract at the William Cohen building in southwest D.C.

Your Honor, I know what I did was wrong. I am not trying to excuse my actions. However, I would like to explain to you what led me to my involvement in actions that were contradictory to how I live my life and operate my business. While I made the decision to participate, Bill O'Shea and Tony Wehausen only gave me two options. Unfortunately, I chose the wrong option. When I was approached by Bill O'Shea and Tony Wehausen, I was told I would not get any more jobs from them if I did not participate. Other contractors were already doing this. In 2002, 2003 and early 2004, P.M. Services provided approximately 17 -20% of the work to my company, Precision Mechanical Service, Ltd. I am the only sales representative for us and I was afraid of not having enough incoming jobs if I did not participate. I did not want to lay off any of my employees. To me, layoffs mean letting our employees down. I honestly feel I, as an employer, must demonstrate loyalty to our employees, if I expect loyalty in return. I panicked at the thought of losing a large customer and volume of work that I made the worst business and personal decision of my life.

Just to quickly explain how the foolish scheme worked is as follows. I would go to the William Cohen building and inspect the equipment in need of repair. I would then research and compile a proposed cost for the repair and submit the proposal to either Bill O'Shea or Tony Wehausen. One of them would call me on my cell phone, office phone or wait until we met at the William Cohen building a few days later and tell me to increase my submitted proposed cost by a certain amount, sometimes it would be approximately $500 or up to approximately $10,000. I would tell my office I overlooked something and have them redo the same proposal with the inflated price and refax or email the proposal with the inflated price to either Bill O'Shea or Tony Wehausen at their office. Once the project was completed, my company invoiced P.M. Services with the inflated amount. After payment was received from P.M. Services, I went to the bank and withdrew two-thirds of the inflated price in cash. I met either Bill or Tony at the William Cohen building, a few times I met them together, and handed them an envelope of cash. Approximately 75% of my dealings were with Bill O'Shea and the other 25% were with Tony Wehausen. The total inflated projects cost were approximately $178,000. Bill O'Shea received approximately $59,000 in cash, Tony Wehausen received approximately $59,000 in cash and I left the approximately $59,000 that had been paid to my company in the bank. I never withdrew any cash or

wrote myself a check for any of the money. The money stayed in our company account and was used for company operations.

I never felt good about what I was doing. I never talked with Bill or Tony about the money. I didn't keep any records or allowed myself to think very much of the situation. I knew what I was doing was wrong. I am so very sorry that I didn't have the courage, honesty or intelligence to keep myself, my loved ones, my friends, and my employees from this situation. Throughout the two and a half years I participated in this conspiracy I was so ashamed of what I was doing. I never spoke to anyone about it. I feel total and complete remorse for my actions. I not only let myself down, but I let down my wife and my family and employees. I have worked hard to be a role model for family and friends and want to continue to do so. I am a better person than this situation indicates.

My wife and I started Precision Mechanical Service, Ltd in May 1989. We didn't have much money at that time and when our income tax return of about $2000 arrived my wife was eager to pay off bills. I wasn't happy with the job I had at the time and so spoke up and said I thought we should start our own HVAC, plumbing and welding company. She wasn't thrilled with the idea. We had many discussions over the next few weeks and, knowing how badly I wanted to do this, she agreed to give it a try. Your Honor, you can imagine, $2000 isn't much to start an HVAC, plumbing and welding business. I applied for eight or nine credit cards and quickly went into debt of approximately $57,000 on cards with 20-24% interest. During the day I was looking for work, locating job materials and opening supply house accounts. At night I would work the jobs. My wife worked her full time job and at night would type the proposals, invoices and prepared materials to be handed out to customers explaining our business. My service vehicle was a Mitsubishi Montero loaded with tools, cutting torches, a welder, project materials, and a handcart. I was so embarrassed of the vehicle I would park about a block away from the jobsite and make as many trips with the hand cart as necessary to get everything needed for the job. I worked alone for about a year until I paid off the credit cards and could afford to hire a helper. My wife continued doing the paper work for two years. By the third year, our company could afford to hire a mechanic and buy a 1974 pickup truck. I started subcontracting the word processing to a temporary secretarial service on an as needed basis. My two man crew and I worked physically on the jobs for about one and a half years. I still did project research and hand wrote proposals in the evenings. At this time, I purchased a used Virginia Electrical Power Services truck. My crew used it daily and I repaired it weekly. I would hire one person at a time as I could afford them and buy the best used truck I could afford. Finally, in 1999, we bought our first new truck. I worked 60-70 hour weeks for the first five or more years. I now work 50-55 hours weekly or more if required. My business philosophy has always been that all HVAC, plumbing and welding contractors sell the same pipe and equipment, but it is good customer service that makes us stand out and be better than the competition.

In the profession I chose, a blue collar trade, it is difficult to find good, talented and stable employees. I hesitate to guess that, in our almost twenty years of being in business, we have had 80 or more employees that did not perform to our standards. Most people have a sad story. My wife and I have bought employees cars, airline tickets to visit sick parents, given cash loans, tires, made monthly rent payments, bailed employees out of jail, paid for attorneys and fines, car insurance, glasses and Christmas gifts. The loans were all interest free and most were paid back by payroll deductions. Many were never paid back in full due to employees leaving the company, but I have always wanted to help anyone who needs it. I have helped several people get jobs when they were down on their luck. I still have one employee of whom I am proud. I feel I helped him turn his life around and he is now one of our best employees. He has been with Precision Mechanical Service Ltd. for twelve years. He came to me at a time when no one would hire him. I gave him the opportunity to do something better with his

life and he did. I want to help those who want to help themselves. I have allowed my heart to override my better judgment and, as a result, have had people take advantage of me, my family and my business.

Precision Mechanical Service Ltd. has 21 employees, including my wife and me. Six employees have been with us for over ten years and six have been working for us for over five years. These employees count on Precision to keep them employed so they can provide for their families. I treat our employees with kindness and respect. I provide most hand and power tools for our employees, which is not common practice in this profession. We provide health care, dental, vacation, and 401k. There is much loyalty from our employees and from me to them.

Our company is a family operated business. My wife, Peggy, is president. She also oversees the office operations, maintaining company licenses, certifications, and payroll. Our son, Bill, is in charge of accounts receivables, company insurance, internet research and bonds. My sister-in-law, Pam, takes care of accounts payable, contract reviews, and word processing. I meet with established customers and seek new business, assess potential jobs and write the proposals, meet with inspectors and perform project final completion quality control walk throughs. When I meet a customer, in order to submit a project cost, I review the job at the site, make a material list, record any customer requirements, and note any necessary safety or hazardous equipment. I give the material list to my right hand purchasing man, Jerry Miller. While waiting for pricing, I write the scope of work, calculate labor hours, research specialty equipment needed, trade codes and OSHA requirements. After the proposal is written, it is sent to the customer and we wait to see if our bid was accepted. As of now, I am the only person Precision Mechanical Service Ltd. has qualified to bid potential jobs.

I have worked hard all my life, but have never worked harder than the last 20 years since starting and developing our company. My wife and I have endured lean times and made sacrifices all with the idea of retiring early. I realize this situation is a real setback for me, my family and employees, and our security, dreams, and future. No matter what the result of my mistake is, I will always keep my family and employees in mind and work harder than ever to make amends for the hardship I have put them through.

I have caused my health to be of concern. My blood pressure has increased considerably, causing an increase in my medication. My depression medication has been increased twice with my doctor considering another change. Your Honor, I must add that my wife, Peggy, has been a saint. She has been extremely supportive and helpful throughout this situation. I am sorry to say she now has an ulcer and is under doctor's care. It is now my turn to return the love and care she has given me.

I know what I did was wrong. I am ashamed and disappointed in myself. I try to be a good person and proud American. I vote, contribute to local charities and pay my taxes. I allowed myself to get involved in something that does not fit my character. I am guilty of the charges that I pled to and, in an attempt to correct the wrong I have done, I stepped forward and admitted my involvement to the US Attorney, US General Services Special Agents, and FBI agents. I have fully cooperated by giving statements, answering questions, taping phone calls, and allowing myself to be wired with voice and video while meeting with Bill O'Shea under the supervision of the General Services Special Agent and the FBI. I will continue to cooperate in any manner I am asked.

Your Honor, I have learned from my mistakes. Conspiracy of fraudulent government contracts charge is the worst mistake of my 50 years of life. Words cannot describe how ashamed and sorry I am for allowing myself to get into this situation. However, there has been good that has come from this mess.

I feel I have become a better person than I was in the past. I now know how much my wife, my family and my friends love me. I know what they think of me. I love them and need them more than ever. I am working harder at being a good role model. I am working harder for Precision Mechanical in order to achieve more stability for my family, my employees and myself. I want to enjoy my life and appreciate life more. I am and will continue to be a better person because of this offense.

I know I have a huge debt to pay for my actions. I will accept any punishment you hand down and expect to make my share of restitution.

Thank you for taking the time to read my letter.

Respectfully,

Rene' D. Lillicotch

# APPENDIX B

*Character Letters
on behalf of
Rene D. Lillicotch*

**LIST OF CHARACTER LETTERS**
*on behalf of*
**RENÉ D. LILLICOTCH**

## FAMILY

Peggy Pearson Lillicotch
*Wife*

Robin Lillicotch
*Brother*

Randall S. Lillicotch
*Brother*

John W. Pearson
*Stepson*

Debra Lillitcotch
*Sister-in-law*

Christopher E. Lillicotch
*Nephew*

Jacqueline Lillicotch
*Niece*

Pamela Meadows
*Sister-in-law*

Jeffrey Scott Lillicotch
*Nephew*

Melanie Pearson
*Sister-in-law*

## FRIENDS

Karen Loschky
*Friend for 11 years*

Michael Patrick Hogan
*Friend for 25 years*

Benjamin McCoy
*Family friend for 39 years*

James J. Biggs
*Friend for over 15 years*

Michael Betts
*Friend for over 30 years*

Denise Blankenship
*Family friend for over 20 years*

Elizabeth A. Smelser
*Friend for 30 years*

Frederick R. Lemoine
*Friend for 32 years*

## BUSINESS ASSOCIATES

William W. Truesdale
*Maintenance Engineer, Annaburg Manor*
*Business associate for 15 years*

Larry Varner
*North Mall Zone Facility Manager, Smithsonian Institution*

Teresa K. McNeely
*President, DJMcNeely, Inc.*

Daniel Joseph McNeely
*President, DJMcNeely, Inc.*

Sandra Crumpler
*Business associate for 12 years*

## EMPLOYEES OF PRECISION MECHANICAL

Jim Blake
*Former employee*

Sharon L. Zavalanski
*Certified Public Accountant*

Dennis A. Sellers
*Employee for 12 years*

Jerry Miller
*Employee for 11 years*

Dave Hankins
*Employee for 9 years*



# FAMILY

September 17, 2007


The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC  20001

Dear Judge Kollar-Kotelly:

I am Peggy Pearson Lillicotch.  I am Rene's wife and we have been together for over
twenty six years.  We dated for six and a half years before we got married and we have
now been married for twenty years.  We're very comfortable and happy spending time at
home with our dogs or with our family and friends.

Rene' has always been a generous and giving man.  On our first date he wanted to take
my son and me to a parade and have a picnic afterwards.  How can one say no to an offer
like that.  He took on the responsibility of raising my son with me.  Rene' has been an
important part of Bill's life.  Together, we raised Bill and after high school we paid for
his college education.  Now, he works with Rene' at Precision Mechanical Services and
is very dedicated to the business.  Rene' has been teaching Bill the mechanical services
trade and hopes to turn the business over to him in the future.

Rene' demonstrates empathy and compassion for those less fortunate.  When we were
dating, Rene' befriended an elderly man, Wilbert Wensil, and did anything and
everything he could to help Wilbert.  He took him weekly to visit friends, to doctors'
appointments, to the VA hospital in West Virginia, to church and to visit family in North
Carolina.  He was the best friend Wilbert had even though there was approximately a
fifty year difference in their ages.  He took care of this person until he passed away.
Even after that, he would check on Wilbert's widow and even helped her move.

Rene' is, also, dedicated to both my family and his.  We help our immediate family as
often as we can, whether financially, or supporting the children in their sports, or buying
gifts for special occasions.  Rene' has helped my brother and his family many times catch
up on past due bills and vehicle repairs.  Our daughter-in-law has not worked since she
became pregnant in November of 2006.  She had a very difficult pregnancy.  We have
helped our son and daughter-in-law and children financially, since it has been a burden
on them to only have one spouse working.  Rene's brother, Randy, fell on hard times and
Rene' bought a riding lawn mower for him.  He helped both my parents and grandparents
with home repairs that they needed.  We, also, try to keep our extended families together
by having a family reunion each spring.  Usually, forty to sixty relatives join us.  It's
important to keep the extended family together and with daily life as busy as it is, it
would be too easy for family to drift apart.

Precision Mechanical Service was built with much dedication and sweat equity. Rene' has been a hard worker for as long as I have known him and even longer. He started this company in 1989 by going door to door, introducing himself, and building his customer base. At night, he would work the jobs he contracted. I typed proposals and invoices after working a full time job and spending time with my son in the evening. From there, the company grew. He eventually had more jobs than he could complete in a timely manner and he hired a helper. He has taken a lot of pride in the company that he started as a one person operation. I retired in 2002, after working thirty years for Verizon and now, work with Rene' at Precision Mechanical. We have twenty five full time employees. Rene' still goes door to door trying to establish new customers. He, also, sees his existing customers regularly just to keep in touch. He is the only person Precision Mechanical Service has to assess potential jobs and write up bids. It would be such a hardship for our employees and their families if Rene' was not able to continue pursuing work for Precision Mechanical. He cares deeply for the people he employs. Our employees rely on Rene's dedication. Not only do the employees rely on their paychecks, Precision also provides medical and dental benefits for them and their families. While he has carried the burden of the huge lapse in judgment he had, he never let on to anyone he works with, (employee, vendor, or customer) the pressure he has been under. He feels it's his responsibility to keep the company running without injecting his personal feelings. It was a complete shock to learn of his offense. It is not his character to risk so much for so little. I hope the Court will be lenient. He has learned a valuable lesson and will never fall into a questionable situation again. I feel completely confident with that. He has always taken pride in his work ethics and commitment to his employees and customers. I stand by him and know when we get past this situation we will continue with the dedication and commitment that has always been a part of our professional and personal lives.

Sincerely,

Peggy Pearson Lillicotch

To:  The Honorable Colleen Kollar-Kotelly
     United States District Court
      District of Columbia
     333 Constitution Avenue, NW
     Washington, DC 20001

From:  Robin Lillicotch
       8427 Meetze Rd
       Warrenton, VA 20187

Reference:  Rene Lillicotch

Date: September 11, 2007

Your Honor,

My name is Robin Edward Lillicotch and I am the oldest of Rene's four brothers. I am
almost 58 years old and have two grown son's with families and 5 grandchildren. I have
a college degree in Police Science and soon after graduation I was drafted into the USMC
during the Viet Nam war. I started my law enforcement career with the Prince
William County Police Department in 1970. I spent ten years on the force until I was in a
gun battle and suffered three gunshot wombs. I left the department and moved to Florida
and stared a new career with IBM. I worked for IBM for eighteen years. I relocated
back to Virginia in 1995 and worked for Rene at his company Precision Mechanical for
several years.

We were brought up in an "old school" family environment. Our Mother and Father both
had careers which ensured we had plenty to eat and clothes on our backs. There was
plenty of love in our close knit family. We knew from an early age the difference from
right and wrong. We were to be part of the solution, not part of the problem in our
upbringing. Our Father demanded that all of us finish high school, go to church, be home
for dinner every night. We were taught to respect everyone and whatever career we
decided on in life to be the best we could be.

Rene is the youngest only in the sense of his age. He was the happiest child in the
neighborhood and was recognized for his singing at the top of his lungs while walking
home from grade school. Most of us left home early to start out on our own. Rene was
about fourteen when he started his first job as a dishwasher at Prince Willliam Hospital
where our Mother worked as a nurse. He really enjoyed working there with Mom and
was loved as a friend to all. When Rene was about twenty years old an elderly man,
Droups who had worked with two of my other brothers befriended Rene. Almost
everytime you saw Rene on a weekend you would see Droups by his side. He always
made sure he had groceries in the house, his electric bill and heat bills were paid. He
made sure he was as happy as he could be even when Droup's own family and children
abandoned him.

My Mother and I often talk about what a caring person Rene is. The biggest difference between Rene and the rest of us brothers is that he takes it upon himself to ensure our Mother has no worries or needs. He takes her out to breakfast every Sunday morning which is a hour and a half drive each way. Her doctors appointments are in Richmond and he makes sure he is the one to take her. He brings her flowers or a gift on each of his visits to her house. He makes sure her car is always in good running condition and has a full fuel tank. Each year Rene has my Mom pick a vacation destination of her choosing and they take off for a week together.

Rene has been married for over two decades and he and his wife, Peggy have great love and respect for each other. They have a son and two grandchildren who stay over night often. They spend their time building tents in the living room to camp out.

Rene's company employee's about thirty people. Many of them are minorities and he has a special relationship with each and every one of them. I do not know any employer's who have the patience and understanding to endure what he does on a day to day basis. Rene knows them and their families depend on him for their livelihood and works many hours 7 days a week, year after year. He started that business out of the back of his pickup truck about 20 years ago and we are all so proud of him.

Rene and I have a very special close relationship, funny I am the oldest and he is the youngest but we fish together, ATV together and talk and listen to each other everyday. He helps me on major projects at my house. We just finished pressure washing my entire house and sealed the wooden decks. He loans me tools from his shop so I don't have to rent them. I've used his trucks to pick up house supplies so I wouldn't have to pay delivery fees.

He is the most favorite Uncle to my two sons (Chris and Jeff) because he takes the time to be with them and makes them feel important. When they first started their families Rene was very generous with his gifts to them. Rene helps my sister in law with her older home in Pa. He'll drive the four hours to her house and spend the day making the necessary repairs to ensure she'll be safe over the winter. He donates everything to her and her family and I know she appreciates everything he does. I've suggested to Rene that he should have some free time for himself and he'll agree with me but never takes it.

Rene has explained to my two sons (Chris and Jeff) about this incident/case. He wants them to learn from his mistakes and how ones life can change dramatically with one bad decision. Rene knows right from wrong and he knows what a terrible decision he made in this case. He knows that his decision has hurt many who truly love him. He excepts full responsibility for his actions and knows he will be a better person when this is finally over. I request that you take into account his contributions to our family and to the community. I'm positive he will never make another life altering decision before asking himself the question "what would our Dad say"

Respectively,

Robin Edward Lillicotch

The Honorable Colleen Kollar-Kotelly                    September 19, 2007
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

Your Honor,
This letter is being written to you concerning my brother, Rene' Douglas Lillicotch.

Our father was a Stationary Steam Engineer in Ohio, became a National Board Boiler
Inspector and was a very respected Boiler Inspector for the State of Maryland .
Our father has passed away but is with us everyday. Rene' and I proudly followed in our
Father's foot steps and chose careers in the Boiler trade.

I worked as a plumber for George Warner Plumbing in Northern Virginia (1968-1973),
worked for Capitol Boiler Works (1973-1981),and became a National Board Boiler
Inspector (1981-1987). In 1987 I became an Engineering Director for a hospital
in West Palm Beach, Florida, where I worked for 18 years until I was forced to retire
early due to Heart Disease.

I know the work Rene' does,  it is hard physical labor in usually unbearable conditions
requiring critical trade skills to deal with potentially life threatening situations.
Rene' also posses a tremendous amount of organizational abilities in order to juggle the
logistics of his on going work schedules and constantly be out looking for new work to
keep his crews employed.

Rene' began his career at Capitol Boiler Works, where through hard work and
dedication became a Boiler Mechanic at a young age. He earned the respect of his co-
workers, developed an outstanding reputation for quality workmanship and excellent
customer service skills.

His accomplishments and ambitions gave him the courage to establish Precision
Mechanical. To build a company from a dream to the reality, that has proudly provided 20
years of dedicated quality service to the Greater Washington Metropolitan Area.

Rene' is truly dedicated to his Company and its Employees, he cares deeply for each
employee and treats them with the utmost respect and compassion. When I visit Rene'
and go to his shop I am surrounded by his employees eager to meet Rene's brother.

He still works long hours and is always available 24 hours a day for emergency service,
often working all night or on weekends to accommodate the needs of his customers.

Rene' and our Mother came to visit me last year, he noticed that I was mowing my 2+ acre yard with a push mower. Knowing that I was on a limited income and in poor health, Rene' went home and arranged to have Lowe's Hardware Store deliver a riding lawn mower to my house, just because he cared. I think of him every time I mow the lawn.

Our mother is 78 years old and her health is failing, Rene' visits her almost every weekend, a 70+ mile trip each way, she cherishes the time he spends with her and would definitely be devastated if he were unable to continue to his visits.

I see Rene' is deeply troubled and truly sorry for his actions. He has always been able to learn and grow from his mistakes and I know, if given the opportunity, he has another 20 years of quality service to provide. He is a valuable asset to our family, his company, his community and to our great nation the United States of America.

Your Honor, Please, I love Rene' very much and know he is a wonderful individual that truly deserves a second chance, I respectfully plead for as much leniency as a citizen may receive.

Respectfully Submitted,

*Randall S. Lillicotch*

Randall S. Lillicotch

September 17, 2007


The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001


Dear Honorable Colleen Kollar-Kotelly,

Allow me to introduce myself, my name is John W. Pearson, born Oct. 30 1970, have a
Bachelors degree in sociology from West Virginia University, married for 10 years with
two children (son Dylan 7, daughter Madison 2 months), (step)son of Rene' D. Lillicotch.
I have known Rene' D. Lillicotch for roughly 27 years.  Rene' has officially been my
stepfather since 1987 although I view him more as my father. Rene', along with my
mother, put me through college.  Rene' is a very important part of our family and has
been a very loving husband to my mother, not to mention, an excellent grandfather to my
son and now daughter.  All the years I have known Rene' he has shown he has as big a
heart as anyone I know.  He has helped out many family members' either financially or
physically and never asked for anything in return.  Just this past December 2006 my wife
became extremely ill with her pregnancy and thus lost her job, early in 2007 she was
diagnosed with melanoma and Rene' and my mother helped us out with some bills as
well as emotional support during that trying time. He is a loving son who visits his
mother regularly, taking her to breakfast, as well as, on little trips.  When my great
grandparents were alive Rene' would travel to their house and make needed repairs to
their home, this also goes for my home, my uncle's, my aunt's and my grandparents
homes as well.  During the holidays Rene' and my mom would pick my grandmother up
and take her to see Christmas displays and instead of getting together with friends would
spend New Years Eve with my grandparents at their home.  This was very special to my
grandmother because she was in such poor health it was always nice when she would get
to spend time with family and or just getting out of the house.  Rene' also was a major
reason that my grandparents were able to go on a family vacation to the beach; our family
will never forget this as my grandmother passed away unexpectedly a month later.
Growing up, Rene' never treated me like his stepson but rather as his son, always
introducing me as such and this would always make me feel proud because my natural
father was never involved in my life.  He would take the time to play football outside
with me and my friends or take me fishing and camping even though his work schedule
would keep him busy all week.  I grew up with my single working mom who all I ever
wanted was for her to be happy and some day find a man who would be a good husband
to her.  Well, I can honestly say that I couldn't have asked for a better husband for my

mother than Rene'. Rene' cares for and loves my mother with all his heart and for that alone he has my respect.

Rene' was always working hard to better our family life. He started his own business Precision Mechanical Service out of our two bedroom apartment all the while working his full time job that sometimes required him to work 60, 70 or even 80 hours a week. Through his hard work he has grown his business from a one man show to now employing 25 employees. I have worked for him for the last 8 years. Throughout my years working for him I have found Rene to be an excellent boss to work for, caring not only about his business but also all the employees that work for him. Rene' has a good heart and is always willing to help you in any way he can. Rene' has on numerous occasions provided loans to employees in need at no added charge to them and only asks in return that they pay back what they can weekly until the loan is paid in full. I have been slowly trying to learn different aspects of the mechanical and plumbing field and Rene' has been very patient and helpful in tutoring me. I believe it's a testament to Rene's character as a boss that the core group of his employee's have all been with the company for 10 plus years, add the fact that many employee's who leave the company often request to come back because they know they would be working for a fair boss.

It saddened me to learn about his current legal situation, because I truly feel that Rene' got caught up in something that wasn't his intention. Throughout this ordeal Rene' has stayed strong, and has accepted complete responsibility for his actions. He blames no one but himself and fully understands the seriousness of his actions. He continues to have a positive outlook on life where possibly a lesser person would have used the legal matter as reason to lash out or turn negative towards the people around them. I humbly ask for leniency when considering the proper punishment for Rene'. Our family would be devastated without Rene', as would his business and the people he employs.

Sincerely,

John W. Pearson

To:  The Honorable Colleen Kollar-Kotelly
     United States District Court
      District of Columbia
     333 Constitution Avenue, NW
     Washington, DC  20001

From:  Debra Lillicotch
       8427 Meetze Rd
       Warrenton, VA  20187

Reference:  Rene Lillicotch

Date: September 11, 2007

Dear Honorable Judge Colleen Kollar-Kotelly,
My name is Debra Lillicotch and am a resident in the state of Virginia.  I have been
employed with the IBM Corporation for the past 24 years as a Professional Consultant,
having worked for IBM in Florida, North Carolina and now Virginia.  I have two children
ages 29 and 27 and a granddaughter, I have two step children ages 36 and 33 with 3
grandchildren.  I am a Catholic and have strong ties to our church and community.

I have known Rene Lillicotch's for the past 14 years and am his sister in law.  During the
time I have known Rene he has become more than just my brother in law, he is truly a
brother, a confidant, a dear lifelong best friend.  I married Rene's older brother and we
are a very close family.  If I had to sum up Rene in a sentence it would be, "Caring,
genuine, warm, generous, fair, happy loving person".  You must think that that is
impossible for one person to possess all those qualities.

I have been with Rene and his family many times.  He is very dedicated to his wife
Peggy.  It is wonderful, so funny and happy to be around them.  We get together often
and he takes such good care of her.  She is quite the lucky woman, he always holds her
hand, opens doors and holds her chair for her.  He has dedicated his life to her and her to
him.  They have been happily married for close to 25 years and still act as if they just
met.  Even though they have been married for such a long time he still loves to surprise
her for no special occasion.  He brings her flowers and gifts for no reason.  I remember
one time he left for work but made her coffee and put her cup on the table, he had a card
on top the empty cup and a ring she had wanted inside.  He has enlisted many friends to
surprise Peggy with a special birthday, we decorated the entire house, yard and driveway
with balloons and signs.  In the driveway was a new car she wanted and he had a huge
bow around the car and filled it full of balloons.  They have known each other since grade
school and are still best friends.

I think the most amazing is his dedication to his mother.  Mamma is now 78 years old
and in poor health and lives alone in Ladysmith, VA which is about an hour and half
from us but he has never missed a week going down to see her and calls her many times a

week. We usually try to go on Sunday's with him and we always have such a great time, we either take Mamma out for dinner or she will cook for us which she loves to do. We sit there all day telling stories, talking and laughing. He takes her to her doctors appointment in Richmond, she recently had several terrible bouts with pneumonia and kidney cancer, she had a kidney removed last year. He always brings her homemade dinners he made for her when he comes so she can have meals all week. He always brings her a little present of some kind, something little but always had a lot of thought. He has her in the fruit of the month which we get a kick out of and they grow flower bulbs in a container he bought her kitchen table and one for his wife. They grow different bulbs in them each quarter and compare how they are doing. He really just dotes on her so much, he is the youngest of 5 boys but he is more like her best friend. They sit and talk for hours and hours solving all the world's problems. He also takes her on vacation several times a year, just the two of them. He tells her to pick where she wants to go and then the two of them go on their road trips or fly. They come back with just the greatest stories, we will laugh for hours. She really is so very close to Rene and depends on him as a best friend, as a son and spiritually. She worries a lot if she doesn't hear from him in a couple days. The bond and love between them should be envied by any mother.

Rene has many family members on Peggy's side of the family which he has helped raise their children (Brooke, Anthony, and Matthew), helps buys their groceries, helps with child care expenses, and employee's them in his business Precision Mechanical. His sister in law and son in law both work in his business.

Rene's family is everything in the world to him. He drops everything to help anyone. Once his brother in law Tony ran out of gas on his motorcycle in West Virginia, Rene had to leave a meeting, went home and got his trailer, drove to WV to help him. The motorcycle was not out of gas, Tony only needed to switch to auxiliary but instead of being upset Rene laughed and laughed. There are a thousand stories like that with Rene, it is just to say there is nothing he would not do for anyone and will never complain and never ever feels burdened but instead happy to be able to help anyone.

He now has two grandchildren, Dillon and Madison 2 months old. He is very dedicated to both, Dillon is involved in Tae Kwon Do and goes to all his matches, Dillon is called the Quiet One by the master, he is so proud of him and is a very good student in school. They beg to babsit the nieces, nephews and grandchildren every week and have converted his basement and yard into an unbelievable playroom for his family and grandchildren. He has everyone over often and their entire family goes on vacation together every year. They all love him so very much and run to him as their source of comfort, love and direction.

Rene is a great outdoor, nature and animal lover. He takes the time to be in nature and has always had animals. Currently he has two bull mastiffs which he calls his girls and a cocker spaniel. He takes them on drives and long walks and spends a good deal of time with them. He always has a great funny story each time we are together to tell us about the girls. They love getting into things. One time we were over visiting and Rene had

their dinner thawing out, we commented on wow how good it was going to be. Within the hour Dahlia had gotten it and ate the whole thing. They have chewed on his truck bumper, got in the UPS man's truck and ate their lunch, gotten their dinner many times and he laughs but always tries to out smart them which is hard to do.

Rene's business Precision Mechanical employees 32 people, 32 families depend on him. He has helped each and every employee with a lot more than just their employment. He has helped their families with extra financial expenses, helped them when they have gotten into trouble and has given them advice and has been a great friend to them all. He understands them all and knows how to help them in their personal and professional lives through motivation and spiritual advice.

He has so many friends, but one in particular was an older man Droups, who was very ill and frail, he could only get around with difficulty on a walker and had a throat operation which left him with little speech. He would visit him several times a week, making sure he ate and get out of the house or take him to doctors appointments. Sometimes with Rene's busy schedule he would pack him up and take him on the road with him while he worked. Droup's just loved it. On Droup's 80th birthday Rene catered and through him a huge birthday party at Droup's favorite restaurant.

He has also done some wonderful deeds for my sister, which I know she is going to be writing a letter so will leave that up to her. But what he has done for her family is beyond goodness of the heart and makes me cry with happiness when I think of everything he has done. Using his time, expertise in helping them make it through the winters.

We look so forward to the times we are going to be with Rene because he loves to talk, listen, laugh and solve the world's problems. You know when you are with him he truly cares and listens. I think often on what I could do that would make him happy or what is a great present I can get him many times because of how much he always does for so many other people and never himself.

Rene is more than family, he is a best friend, someone you know you can always count on, you could never ask too much of him. His happy caring outlook on life is so refreshing and unusual from most. Most of us are consumed with our daily work, home and personal lives and tend to focus on our stress, workloads and what is next, we forget the true meaning of life, where Rene lives it and breathes it.

I honestly believe I am a better person for having known Rene.


Respectfully Submitted,

Debra Lillicotch

Christopher E. Lillicotch
369 Hose Shoe Dr.
Dublin, Ga. 31021
(478) 274-1106

September 24, 2007

The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC. 20001

RE: Rene Lillicotch

Dear Judge Kollar-Kotelly,

    My name is Christopher E. Lillicotch, Mr. Rene Lillicotch is my uncle. I reside in Dublin, GA. where I am a Certified Medical Dosimetrist and Site Manager for the Oconee Regional Cancer Center. O.R.C.C. provides radiation therapy to cancer patients in middle Georgia.

    Throughout the course of my life uncle Rene has been a stable, considerate and most of all loving role model. He is the epitome of the family man. He is generous to a fault when it comes to his family. On every trip to Virginia he always offers his home to my family and makes it a priority to at least visit me at my father's home. He has been loving and generous to my family. Rene has also been the only uncle to maintain contact with me, my wife and two children. He is the only uncle that my eight year old son recognizes on sight. His commitment to family is only rivaled by my father. As the youngest of my uncles, Rene and I have always shared a great bond as he is only thirteen years my senior. As a teenager he was always willing to include me in "fun" activities as taking me to the community pool for swimming lessons. When I moved to Florida at the age of seven, I was greatly prepared for life in and around water. I have grown up to enjoy swimming, fishing, diving, surfing and boating. I attribute these to the fact that Rene provided me the opportunity to learn to swim as both my parents worked.

    As an adult, Rene always kept in touch with me. He visited me at Lynchburg College and was always generous in making sure I had some pocket money as I was on scholarship and work study to pay my tuition. Rene attended my graduation, only one other uncle did so. He and I continue to share a special bond. Rene attends an annual fishing trip where I have taken several opportunities to access his business knowledge and experience to aid in my own business education. He is always willing to advise me whenever I have had situations arise that he can shed insight into. His opinion both personally and professionally are very important to me.

Although the offense he has committed is serious, his behavior in this offense is completely out of character. I am still in a state of shock that he has done what he has admitted to. I would like to take this opportunity to respectfully implore you for your leniency in your dealings with my uncle. Rene is a loving, caring and generous man who is totally committed to his family. I am very proud to call him my uncle and love him very much.

Respectfully and Sincerely,

*Christopher E. Lillicotch, BS, CMD*

Christopher E. Lillicotch, BS, CMD

09/24/2008 Case 1:07-cr-00169-CKK Document 14 Filed 07/07/2008 Page 45 of 76 /004

Jacqueline Lillicotch
369 Horse Shoe Drive
Dublin, GA 31021
(478) 274-1106

September 24, 2007

The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

RE: Rene Lillicotch

Dear Judge Kollar-Kotelly,

My name is Jacqueline Lillicotch, Mr. Rene Lillicotch is my Uncle through marriage. I have known Mr. Lillicotch for the past nine years. I can tell you that he is a stable, upstanding, kind, considerate and loving person. He is the epitome of the family man. He is generous to a fault when it comes to his family. On every trip to Virginia he makes it a priority to visit myself and my children, he is always eager to be a part of their lives although we live far apart. He has been nothing but loving and generous to my family.

Although the offense he has committed is serious, his behavior in this offense is not the Man I know and love. I still find it hard to believe that he has done what he has admitted to this is so out of character for him. With that said I implore you to act leniently in your dealings with my Uncle. He is a very loving and generous man, committed 100% to his family, of which I am proud to say I belong.

Sincerely,

Jacqueline Lillicotch

Jacqueline Lillicotch

September 19, 2007

The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

Dear Honorable Colleen Kollar-Kotelly:

My name is Pamela Meadows. I am writing this letter on behalf of Rene' D. Lillicotch
who is my friend, employer and brother-in-law. I met Rene' in the summer of 1972 when
my family moved to Manassas, VA. We lived on the same street, went to high school
together and had many of the same friends. During those four years, we spent a lot of
time together at school, football games and just hanging out with friends. Our summers
were spent at the neighborhood pool where Rene' and his brothers were lifeguards and on
the swim team. Even then he was very close to his family.

Rene' has always had a big heart and it is just his nature to be generous and giving. He
started dating my sister in 1981 and they have just celebrated their 20th wedding
anniversary. He not only has been a good husband but an equally good stepfather,
grandfather, son, son-in-law, brother and brother-in-law. Rene' has a strong commitment
to his family. He has helped to raise my nephew since he was ten including putting him
through five years of college at West Virginia University and now employing him at
Precision Mechanical Service and teaching him the business. He has helped every
member of his family and mine in one way or another. Rene' has always been there to
lend a hand to help my parents, grandparents, brother and me to make repairs on our
homes, vehicles or anything we ask. He and my sister have helped many members of
both families financially over the years. In addition to all of his support, he helps to
make sure that our families remain close. We spend holidays and vacations together as
well as having an annual family reunion at their house. He is a very special member of
our family.

I have been employed by Precision Mechanical Service on two separate occasions for a
total of 10 years. Being a single parent, Rene' has given me the opportunity not only to
support my family but also the flexibility to be there for my daughter while growing up. I
will always be grateful to him for this. Rene' has taken his company from a one man
operation to a corporation with twenty five employees. Several employees have been
with him for ten or more years. Rene' is a very caring and dedicated employer. He not
only provides benefits such as medical insurance and retirement funds which the
company generously donates to but is supportive on a personal level. He has extended
interest free loans to employees with the ability of payroll deduction payback. He also
has given money to help an employee return to Puerto Rico after the death of his father
with no expectations of being paid back. Every employee at Precision Mechanical

Service depends and relies upon Rene' for their income and health benefits needed to support themselves and their families. In addition, Precision Mechanical Service depends and relies upon Rene' to solicit new jobs and customers to keep it in business.

Although a serious offense has been committed, I hope that the court will be lenient with Rene' Lillicotch at this time. Poor judgment was made that was very out of character for him. A lot of people as well the business he has worked so hard at building for the past eighteen years would be adversely affected without your leniency.

Sincerely,

Pamela Meadows

Pamela Meadows

To:        The Honorable Colleen Kollar-Kotelly

From:      Jeffrey Scott Lillicotch

Re:        Rene Lillicotch

Your Honor,

I write to you in regards to Mr. Rene Lillicotch. He is my uncle, and he will be sentenced by you for crimes that he has committed. I am 33 years of age, and I have had a continuous relationship with Uncle Rene for all of my life. My hope is that I can share with you some more of the personal side of Uncle Rene, as you consider his sentence.

Basically, I love him. I do hold him in high regard for both his character and integrity. So, I was absolutely shocked when he informed me of his circumstance. True to his character, though, he told me the things that he had done, and he did not try to make excuses. He accepted the fact that he was responsible for his actions. He said that he had done a stupid thing.

Our family has a long standing relationship in the mechanical profession. I, myself am a stationary engineer. I began my career as a teenager, working for Uncle Rene over the summer breaks, and he worked me hard to show me the advantage of higher education. So, I went to college, got a degree in Psychology, but still ended up in the profession. Uncle Rene was instrumental, though, in shaping my professional life. He has always been a fun-loving part of our family and a positive role model. Through this experience, he is teaching me that an intelligent, seasoned, good-hearted person can still make bad decisions.

He is a good man. I denounce his actions, but all the same continue to love and support him. I know that he would do that for me. All I ask is that you consider leniency. I know that it is hard to build an image of a person from a few remarks on a paper, but I cannot stress enough that Rene Lillicotch is a good person. I know this to be true. I still believe this. He is not greedy. He loves to share anything that he has. He is very giving. I do imagine that you will hear from many that this seems very out of character for him. It is!

Sincerely,

Jeffrey Scott Lillicotch

The honorable Colleen Kollar-Kotelly
United Stated District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

Dear Judge Kollar-Kotelly,

My name is Melanie Pearson, I am an office manager for a busy orthodontic practice and have worked here for 6 years, I have been married for 11 years and have two sons.

I have known Rene Lillicotch for 12 years, he is my brother-in-law. I am from England and the only family I have in this country are my husband's family. I am fortunate because I have been treated extremely well by them, they are all very loving and generous.

There are many, many times that Rene and Peggy, Rene's wife, have helped us and have supported us. It would be impossible to name every instance. It is important to realize that Rene is a family man who will do anything to help if needed, he is an important part of our family structure.

When my husband and I got married in 1996, we were struggling financially. Rene and Peggy opened up their home to us and allowed us to be married in their house. They provided us with financial and emotional support through tough times, and have continued to do so through the years. They have watched our children if needed, helped us with daycare or other bills and have always been there for us.

A few years ago, our air conditioner stopped working in the middle of summer. Rene personally came to our house and replaced our inside and outside unit. We stayed at their house while it was being fixed.

We recently needed help with our dog, who was very sick and too big for me to be able to move. Rene came and helped my husband take her to be put to sleep, which is not a pleasant experience but he helped us because we needed him to.

Every holiday is spent at Rene and Peggy's house. They have created a loving and fun home for us all to be able to take our children and spend memorable times together. Rene is present at our childrens sports and school events and is a positive male role model in our son's lives.

I have always admired Rene because he started with nothing and created a successful business through sheer perseverance and hard work. He always treats people fairly and with respect and I just hope that this is all taken into account when deciding the outcome of his case. I believe that he is very regretful of his actions.

Thank you for your attention in this matter,

Yours Sincerely,

Melanie Pearson

# FRIENDS

To:  The Honorable Colleen Kollar-Kotelly
     United States District Court
     District of Columbia
     333 Constitution Avenue, NW
     Washington, DC 20001


From:  Karen Loschky
       2600 S Delaware Dr
       Easton, PA 18042


Reference:  Rene Lillicotch


Date: September 18, 2007

Dear Honorable Judge Colleen Kollar-Kotelly,

My name is Karen Loschky and reside in Pennsylvania. I have been employed with the
Head Start program for about 6 years and currently am an Event coordinator part time. I
have two daughters ages 26 and 24 and a grandson age 3. My children and I are Catholic
attend church every Sunday. I am very involved in my community and volunteer my
time in helping raise money for the homeless through bake sales, car washes, community
yard sales and help make Thanksgiving dinner every year in our local Salvation Army in
Easton, PA.

I have had the fortune to know Rene Lillicotch for about 11 years. His brother Robin
married my sister Debby Lillicotch. I spend a lot of time with my sister in Virginia, we
are best friends and have been very close since we were small children. Rene has been a
very good friend to me and my family during this time.

I live in a historic home, built in 1900 and have had so many problems with heating,
electrical and plumbing. Rene has been instrumental in helping me so many times out of
his kindness. He has several times driven to my home in the dead of winter to help us
with frozen pipes. He drove up several other times when I had plumbing and septic
problems. He never asks for anything but brings food with him. I have offered to pay
him but he knows we have a difficult time. He has the kindest heart imaginable. We
really do not know what we would have done without his help. Our home is in between
two mountains and the Delaware river and it gets mighty cold in the winter time.

When I am in Virginia, he always makes it a point to stop by and say hello and spend
some time talking about what is going on. I know he will be there for sure on holidays.
It is always such a wonderful time, he is just the kindest person I have ever met and know
he really genuinely cares. He has also been so good to my children, when they drive up
with me he makes sure our oil has been changed, tires are good and right pressure and all

fluids are good. I have been a single mother for 20 years and he worries we might not be thinking of those things.

I really think of us as very lucky to have Rene in our lives!!


Sincerely,

Karen Loschky

Karen Loschky

From: Michael P. Hogan
      8544 Short Street
      Manassas, Va 20112


To:   The Honorable Colleen Kollar-Kotelly
      United States District Court
      District of Columbia
      333 Constitution Avenue, NW
      Washington, DC 20001



      I am writing in reference to the case pending for Rene' Lillicotch. I have been friends with Rene' and his family for the last twenty-five years. During this time I have worked with Rene' at different companies and I have also worked for him.

      Rene' has been around through my best and worst of times. Fifteen years ago, Rene' gave me a place to live when I was out of a job and homeless.  Rene' has helped many of our friends in the same kind of way. He has been a good loyal friend .

      I do not know how he got into this trouble but I would have never believed it was true if somebody just told me as gossip. I ask kindly, please help my friend. He has always been a good honest, helpful man. I believe in him and I wish the courts would too.

      Thank you very much for your time,



Michael Patrick Hogan

The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

Subject: Mr. Rene Lillicotch

Dear The Honorable Colleen Kollar-Kotelly,

My name is Ben McCoy , I am the Senior Job Site Inspector for Northern Virginia Electric Cooperative, and have been employed by NoVEC for 21 years. I have seen and inspected job sites that Mr. Lillicotch has been involved with, during my tenure with NoVEC.

I have known Rene and his family for 39 years and we grew up and went to school together. In growing up with Rene, I have seen his un-yielding giving of himself in many different capacities. I always have known Rene to be a moral, honest person that would literally give you the shirt off his back if you needed it. Rene grew up in a very close family that always demonstrated family togetherness and compassion with a true commitment to the family as a unit. He is a good husband, and stepfather to one son, of which he now has two small grandchildren who love and adore their grandfather dearly.

I am also aware that Rene and his mechanical services company employs his wife, Stepson, his wife's sister and the income provided by Rene's company supports his stepson's family. His stepson's wife has recently been diagnosed with cancer, and I can only think that if Rene did anything that was not totally above board and honest, it truly is out of character for Rene, and is contrary to his professional work ethic and personal moral integrity.  This upright, conscientious attitude and practice has been the norm for Rene, ever since he started his company nearly twenty years ago.  I have witnessed his generosity and professionalism on many occasions.

Rene has always shown a great compassion for families in general, while always maintaining a professional integrity on how he operates his company. Once he allowed a mutual acquaintance to work in the work-release program so this acquaintance could provide child support and meet his family obligations.

I cannot comment on what or why anything that has resulted in Rene being in any trouble, however I can say that it was not the way he was raised. Rene's brother Robin is a retired Police Officer and Rene has always shown a great respect and adherence for the law. He comes from a devout God-fearing family. Perhaps stress concerning his stepson's wife recent bout with cancer had an effect on his good judgment.

Recently, at a firehouse benefit bar-b-que, Rene expressed to me that he had made a terrible mistake. Furthermore, that I should learn from his mistake to make sure that when your in business for yourself, that you know who your dealing with and what you mistakenly may be getting into.

Thus, I humbly plead with the Court to grant any leniency possible in your dealings with Rene, and I would not hesitate to say that I am sure that Rene remains an honest, moral husband, father, granddad, friend and contributing member of society, that certainly would deserve consideration in the outcome of his dilemma.

Respectfully,


Mr. Benjamin McCoy
6840 Running Brook Road
Manassas, VA 20112

September 23, 2007

The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

Dear Ms. Kollar-Kotelly,

I have known Mr. Lillicotch for over fifteen years as a personal friend, neighbor and businessman. I have driven pass his office many morning and sometimes weekends to find him working on mechanical projects. Mr. Lillicotch is a customer of mine in Manassas Virginia. I have been servicing him for over seven years as a water treater. Mr. Lillicotch always displays professionalism. I have never known him to do any thing unethical.

I have visited Mr. and Mrs. Lillicotch home for dinner on one occasion. He is a good cook and makes great chili. It saddens me to hear of his involvement in fraudulent government contracts.

Sincerely,

James J. Biggs

To The Honorable Colleen Kollar-Kotelly:

I, Michael Betts, offer this letter as a character reference for Rene Lillicotch.

I have lived in the Northern Virginia area for my entire life. I am an Account Executive at Guernsey Office Products, and have worked at Guernsey for twenty-six years. I also own and operate a local business called Recycling for Charities.

Rene Lillicotch and I became friends when we attended Stonewall Jackson High School about thirty years ago. We have been close friends ever since. Rene was the Best Man at my wedding fourteen years ago. He has been to my home, and I have been to his many times over the years for family birthday parties and cook outs. I know Rene's four brothers, and I trade e-mails back and forth with his mother on a weekly basis. While I am not related to Rene, my relationship is similar to that of being his brother because of all the family time and activities we have had and will continue to have together.

Rene is family oriented. Through my relationship with Rene, I can see he has a close and supportive nature with his wife, Peggy, and son, Billy. While Billy is not Rene's natural son, he has raised him and loved him as his own. In addition, he has worked tirelessly to build his business to support his family. He has also made the time for family activities and to help in teaching and raising his son.

Rene is also a valuable member of our local community. For example, I know that Rene would make time to assist his friend Drew, who was eighty years old at the time of his death, by regularly taking him places he needed to go, working on his household and personal matters, and driving him to visit other people. Rene helped many other people in the same way he helped Drew. For example, a friend trying to sell his house had numerous repairs that needed to be done and Rene donated his time and skill to help him make some of the necessary repairs, so that the friend could sell his house.

I highly value my relationship with Rene. He has given me advice, helped me when I needed it, and has been close to me for most of my life.

Thank you for your consideration,

Michael Betts

September 14, 2007


To:        United States District Court, District of Columbia

From:      Denise Blankenship

Re:        Mr. Rene Lillitcotch


I have known Rene Lillicotch for over twenty years. He is a close family friend. Over the years, Rene has exhibited a solid sense of commitment to his family and friends. With my children, Rene is kind and caring. They seek his company, and he consistently shows a genuine and sincere interest in them.

Through the years, Mr. Lillicotch has run a very successful commercial business and has earned a good reputation within the community. I believe his strong work ethic has been the foundation for his success and has directly attributed to longevity in his field.

In closing, I regard Rene as a loyal friend and more importantly, as person of good character and integrity. In reference to this case, please act with leniency toward Mr. Lillicotch. Thank you for your consideration.


Respectfully,

Denise Blankenship

September 17, 2007

To:          United States District Court, District of Columbia

From:      Elizabeth Smelser

Re:         Mr. Rene Lillitcotch

I am writing on behalf of Mr. Rene Lillicotch. I have known Rene for over 25 years. His wife Peggy has been my best friend for 30 years. I consider Rene a very dear friend. He has always been a devoted son, and made certain that his mother is well cared for in her senior years. His devotion to his wife, family and friends are extremely important to him. My grandchildren even call him "Uncle Nay".

Several years ago, I would see Rene with an elderly gentlemen and I asked Peggy (his wife) who this man was. She explained to me that he lived in Manassas but did not have contact with family or friends. Rene would give him odd jobs and help him in any way that he could. Rene continued to take care of the man who came to be known as "Droops" until he passed away.

Rene is a kind man of integrity. I ask the court to act leniently in its dealings with Mr. Lillicotch.

Sincerely,

Elizabeth A. Smelser

The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

September 16, 2007

Dear Honorable Colleen Kollar-Kotelly:

My name is Frederick R. Lemoine and I am writing this letter on behalf of my friend
Rene Lillicotch. I have known Rene for around thirty two years. I am a happily married
forty eight year old proud father of two wonderful girls. I am currently employed as
Master Carpenter for the Luhrs Corporation in Saint Augustine, Florida where I build
cabinets for sport boats and cabin cruisers. I enjoy my work and have always worked
hard to provide for my family. People say I am reliable and dependable, not afraid of hard
work. I feel my actions and beliefs have proven me to be an honest and honorable person.
I admire these qualities not only in myself but in others. I have always known Rene
Lillicotch to be this way as well. Thank you for taking the time to read what I have to say
about my friend.
In the early 1980's Rene hired me on as an apprentice boiler mechanic working for the
American Boiler Co. We worked side by side for sometimes as many as thirty hours at a
time. Rene taught me how to identify and solve problems with the boilers. Even though
he had the opportunity to leave a job before it was finished and get to it another time, he
did not leave. We stayed until the job was done properly and completely. We became
very close friends and I was thankful for his patience and skills as a teacher as well as his
work ethic.
I spent time with Rene and his wife, his parents and brothers at family gatherings. He was
there for me when my ex wife left me alone with our two small daughters. My ex wife
had many problems with substance abuse and Rene helped me to see we were so much
better off without that kind of influence. He was there as a supportive and caring friend
when I needed one. I have since remarried a wonderful woman who is such a good
mother to the girls and we have together taught them right from wrong. They are now
happy, well adjusted teenagers. My family is my life.
On weekends, Rene and I would help each other repairing and restoring our homes. He
was always willing to lend a hand. Eventually Rene started his own business. He earned
the respect of his employees by his hard work and by treating them with respect.
I was seriously injured in an accident and had to have eight operations. Rene drove me to
and was there for each one of them. Rene's wife cooked for me and both of them would

bring it to me and my children as I was physically unable to prepare meals at the time due to my injuries.

At Christmas Rene's wife played Mrs. Santa Claus on a train ride for the children. Rene bought the tickets for me and my daughters as things were financially hard for me.

We stay in touch by phone and in person. We visit him and his family and he has come here to Florida to see us. It is good to see a friend who I know I can count on.

I have always known Rene to be a hard working man of integrity and am proud to call him my friend. I would trust him with my life.

Rene made a serious mistake in doing what he is accused of. He should not have done it, I know it and he knows it. He regrets having done something unethical and I know he would not do it again.

I think he had a serious lapse in judgement at the time because it is definitely not in his character. Rene is a decent, kind and hard working human being. I ask that the Court, your Honor, consider my words when making your decision in his sentencing.

I thank you very much for your time.

Sincerely,

Frederick R. Lemone

# BUSINESS ASSOCIATES

William W. Truesdale
14088 Carriage Ford Road
Nokesville, Virginia  20181

September 22, 2007

The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC  20001

Honorable Colleen Kollar-Kotelly:

My name is William W. Truesdale.  I am the maintenance engineer for Annaburg Manor Nursing Home, 9201 Maple Street, Manassas, Virginia.  I have been with Annaburg Manor for thirty-two years.  I took care of all maintenance repairs at the facility.  What I could not do , I called on outside contractors.

I have known Rene Lillicotch for fifteen years.  He has done a lot of work for me at Annaburg Manor over the years.  He has completed his welding, hot water replacement, boiler piping, plumbing, etc. in a timely manner.  He was always reliable.  I knew I could depend on him and that's why I called on him to do contracting work for me.

He is a hard worker and friend.  I have on occasion had lunch with him.  I do not know much about his personal family life, other than he spends vacations with his family when he can.

Please act leniently on your decision with Rene Lillicotch.  He is a good man.  I would like to continue using Mr. Lillicotch's services as a mechanical contractor.

Sincerely,

William W Truesdale

William W. Truesdale
Maintenance Engineer
Annaburg Manor

Larry Varner
11037 Del Rio Drive
Fairfax, VA 22030
September 11, 2007


The Honorable Colleen Kollar- Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001


The Honorable Colleen Kollar – Kotelly


It is with great pleasure that I furnish you with a character reference on behalf of Mr.
Rene Lillicotch both on a personal and professional level whom I have known for the
past seventeen years.


Let me start by explaining a little about myself. I currently hold the position as the North
Mall Zone Facility Manager for the Smithsonian Institution which encompasses the
responsibility of managing the facilities operation for the Museum of Natural History and
several other satellite facilities. Prior to this appointment with the federal government, I
was the Building Operations Manager for Gannett/USA TODAY News which included
management of their Corporate Headquarters and Data Center. During the period of 1995
– 2000 I held a federal position as Operations Manager for the National Gallery of Art.
Prior to that I was the Operations Manager for Fair Oaks Hospital. As you can see from
my experience in the past twenty years, I have held positions of critical nature that
require both employees and contractors who maintain an extremely high level of
responsibility and integrity to support these types of facilities. Mr. Lillicotch displayed
the type of integrity as a person and as a manager which made him one of my primary
mechanical contractors at all of these facilities in regards to reliability, honesty,
workmanship and support of the critical facilities that I have managed

Mr. Lillicotch has always displayed a high degree of honesty, responsibility, and
ambition. He has always been trustworthy and dependable in all of my dealings with him
on a personal and professional level. He ensured that his workers reflected the honesty,
hard working attitude and integrity that he displayed during the time that I have known
him. Mr. Lilicotch has always been known as a family loving type of person who would
go out of his way to help other people and spent quality time with his wife who I have
had the pleasure of meeting. He was known to give people a second chance in regards to
workers who did not make it with other companies or had other types of personal
problems. Mr. Lillicotch has displayed over the years that I have known him the epitome
of a person who really cares about other people and who takes pride in professional
workmanship, attitude, dependability, reliability and his sincereness in doing the right
thing in relationship to business and his personal relationship to other individuals.  In

Mr. Rene Lillicotch

September 11, 2007

1989 as Mechanical System Manager for Fair Oaks Hospital , I had the fortunate experience to be one of the first major customers that Mr. Lillicotch had the opportunity to be awarded a contract on the installation of catwalks on Boilers at this facility. This project was competively bidded between Rene and (2) other mechanical contractors in which he won the award based upon being the lowest bidder. The installation of the catwalks went in flawlessly under Mr. Lillicotch supervision. The type of attention and details that he displayed in relationship to completing this job and other smaller jobs that he did for the hospital led to his status as being the contractor of choice for mechanical jobs. Mr. Lillicotch has performed at the same level of dependability, professionalism and dedication during the years that I have known him. He has responded on holidays, nights and on weekends to support the needs of the customers. An example include responding the breakage of the main condensate line for the National Gallery of Art on a July 4th holiday, replacing the main air conditioning compressor for Gannett main Data center and responding to mechanical failures at a short notice. Even after I left to go from one job to another Rene's business services were retained by the different facilities as one of their primary mechanical contractor because of the strong professional and personal relationship that he built with these organizations. Mr. Lillicotch's strong commitment to helping other people, giving second chances to workers in the trade and instilling honesty in his people has led to the growth and prosperity of his company.  His generosity and love for his fellow man and treatment of all regardless to race greed or past history should be taken into consideration and recognized as in regards to the integrity and honesty of this person who I have the highest regards as a person, friend and business associate.

Mr. Lillicotch is indeed an asset to his community and a true example of humanity toward his fellow man who I respect and give my wholehearted endorsement.

Sincerely,

Larry Vamer

Smithsonian Institution
North Mall Zone Facility Manager

# D J MCNEELY, INC.
### Welding Services

September 18, 2007

Teresa K. McNeely, President
DJMcNeely, Inc.
9203-F, Enterprise Crt
Manassas Park, VA 20111

The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Ave, N. W.
Washington, DC 20001

RE: Mr. Rene Lillicotch

To the Honorable Colleen Kollar-Koteely:

I am Teresa K. McNeely, President of DJMcNeely, Inc. Welding and Metal Fabrication of Manassas Park, Virginia. My husband, Daniel, and I have owned our shop next to Precision Mechanical, Inc. for over six years.

The first person we met when we began our business in this location was Rene Lillicotch, founder of Precision Mechanical. Rene began to guide and assist us immediately. He extended friendship and business acumen from the first. He began to give us work and referrals right from the start. Indeed, one of our first payments for services rendered was from him.

In the six years plus that we have been privileged to know Rene we have found him to be an invaluable asset to his company, and to ours. We have received many jobs and projects because Rene vouched for us to other businesses, thereby helping to grow our reputation in the construction services industries.

We know him to be a devoted family man, an excellent boss, and a firm friend. He has always been fair with his employees, and concerned about them.

I firmly believe that the crime that Rene committed, which he pled guilty to and deeply, deeply regrets, is completely out of character for the Rene we know and admire. He made a horrible error in judgment and knows full well that it is time to "pay the piper."

I, and all of Rene's many friends and business colleagues, am hoping that the price of the crime reflects the fact that Rene has never before been anything but a tremendous asset to his family, his community, and his business. As fine as his staff is, Precision Mechanical will suffer substantially as long as Mr. Lillicotch is absent.

Your Honor, I know this man, I admire this man, and I am indebted to the generosity of this man in the giving of his time, advice, and friendship. I therefore ask that the greatest leniency that the law allows be extended to him, for I truly believe he, of all transgressors, deserves it. For Rene, for his family, I ask Your Honor to grant as much mercy as is permissible.

Thank you, your Honor, for your time in reading and reflecting on this heart-felt reference and plea.

Sincerely,

Teresa K. McNeely, President

9203F ENTERPRISE COURT • MANASSAS PARK, VA • 20111
PHONE: 703-335-9544 • FAX: 703-335-1946
CELL: 703-919-9063

# DJMCNEELY, INC.
## Welding Services



September 18, 2007

Daniel J. McNeely, Vice-President
DJMcNeely, Inc. Welding
9203-F, Enterprise Court
Manassas Park, VA 20111

The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW 20001

To The Honorable Colleen Kollar-Kotelly:

My name is Daniel Joseph McNeely. My wife, Teresa, and I own and operate a welding company called DJMcNeely, Inc. in Manassas Park, VA. We have been direct neighbors with Precision Mechanical, operated by Rene Lillicotch, for six years, during which time our company has forged an outstanding working relationship with Rene and his employees, as well as a personal friendship with Rene.

Rene has been instrumental in helping me with many aspects of running a small business, such as deciphering the Davis Bacon Act, correctly displaying employee information on a bulletin board, and other details overlooked by less professional businesses. I say this with utmost sincerity, Rene has always been a true professional, and has always gone out of his way to help me. Rene is, in many ways, like a big brother to me.

We have been involved in numerous projects with Precision, and we have always been treated with professional courtesy. I have dealt closely with Jerry Miller, Rene's Office manager. And as smart and outgoing as he is, he cannot do everything that needs to be done for company operations over an extended time. Rene has some good people working for him, but I don't believe Precision Mechanical could operate as well as it does without Rene having some input on daily matters.

As small business owners, Teresa and I have had our share of problems to contend with, be it employee related, or client related. So we look closely at how other companies operate. Precision is really quite a model of efficiency. But it's a team effort. My wife and I aspire to the level of professionalism and efficiency we see in Precision. Precision Mechanical really is one of the best companies in the Washington Metropolitan area, due mainly to its founder, Rene Lillicotch.

We would only ask that your Honor be lenient with Rene, in light of his outstanding qualities as a top notch business owner, friend, and person.

Thank you for your time and consideration in reading this letter.

Sincerely,

Daniel J. McNeely, Vice-President

9203F ENTERPRISE COURT • MANASSAS PARK, VA • 20111
PHONE: 703-335-9544 • FAX: 703-335-1946

Personal & Confidential

September 21, 2007

The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC  20001

You're Honor:

My name is Sandra Crumpler.  I am currently a manager for RJE Construction Company,
a division of DYCOM in Tampa, Florida and a retired Verizon Communications Area
Manager.  Most of my adult life has been spent as a professional in the construction
business with assignments in Virginia Beach, Virginia, Manassas, Virginia, Stockton,
California and Los Angeles California.

I have known Mr. Lillicotch since 1997 when I began working on a job at Dulles Airport.
His wife, Peggy Lillicotch was an employee of GTE Virginia at the time I first went to
the Northern Virginia area.  Although my work in the area had nothing to do with Mr.
Lillicotch's business, he was extremely polite, courteous and extended offers to assist me
in my search for housing, support with automobile issues, just anything I needed.  When I
retired from Southern California, he offered to come drive my furniture across country to
keep me from paying movers.  I never had to ask for any type of assistance, he was
always quick to offer help.

I was shocked to hear of the issues he got involved in.  In the 10+ years that I have
known him I have never observed anything that would indicate he was not above board.
He is such a generous person, helping his family and friends, I just don't understand it.
He is always offering to take you to the airport or pick you up to help you save parking
and or courtesy car charges.  He opens his home to me and any friends I may be traveling
with.  He is quick to insist that he take care of lunch or dinner if you are at his home.  He
is a Southern Gentleman who still opens doors for ladies and is just plain old kind to his
friends.

Mr. Lillicotch is well thought of in the community where he lives, at the small cabin on a
nearby lake that he often offers up to his family and friends and with his fellow workers.
He exhibits a strong work ethic and expects the same of his people from all conversations
I have observed.  I can't imagine how he got involved in any unacceptable activity.  He
has grown a nothing business into a great one by putting personal blood and sweat equity
into it.  I have personally observed him on the job in the wee hours of the morning
ensuring that all was going well.  He worked on projects at Dulles Airport and I know
how concerned he was for the functions of the airport and the safety of his employees.
He showed such personal concern for the projects he worked on, and was so proud of the

ability he and his workers possessed to perform the highly skilled functions seldom understood as associated with his business.

I, of course, know very little of the case and why he got involved, but I can personally tell you that in all other parts of his life that I have known, he has been above board, kind, gentle, loving to his family and friends. I ask that Your Honor be lenient in the coming actions.

Respectfully,

*Sandra Crumpler*

Sandra Crumpler
19647 Bergenfeld Drive
Land-O-Lakes, FL  34638

# EMPLOYEES OF PRECISION MECHANICAL

The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001

Dear Ms. Kollar-Kotelly,

My name is Jim Blake and I am a life-long resident of Manassas, Virginia. I have been happily married for 35 years, am the father of three grown daughters and have five beautiful grandchildren. I have been employed for the past 35 years with my present employer, Thos. Somerville Company, a wholesale plumbing distributor. I have known Rene Lillicotch for the past 25 years, not just as a good friend, but I have also been his salesman for the company that he and his wife own, Precision Mechanical. Renee comes from a very well respected family and I also know one of his brothers, who was formally with the Prince William County Police Department. I have seen Renee take his company from a two-man operation to one of the larger mechanical contractors around and know many of his staff members personally. I know that his staff in the field, as well as his staff in the office has shared with me what a good person Rene is to work for. He has helped several staff members with financial loans and I know on at least two occasions has given a several staff members a second chance to improve their work performance instead of immediately discharging them, even though other staff recommend their discharge. I took my branch manager with me on a sales call, a couple of years ago, for a visit to see Rene's operation at Precision Mechanical. I remember after leaving Rene's office that my manager remarked about Rene's manners, by saying, "Yes Sir" to him during our meeting. I told him that Rene was old school and always used good manners and exhibited them on many occasions that I had observed, such as opening doors for ladies or helping an elderly person. I shared with him that it was just the way he was raised. I was truly shocked to learn about this unfortunate situation with Rene. I know what a great marriage Renee has and his wife and family are his life. His wife has always been very supportive of his decision to start and expand his company and he shared with me that, "she is my best friend". I would like ask the court to show leniency to Rene Lillicotch, there is no doubt in my mind that Rene is very sorry for his actions will never do anything illegal again.

Respectfully,

*Jim Blake*

Jim Blake
8026 Oak Street
Manassas, VA 20111
703-856-3946

# Sharon L. Zavalanski, CPA
## PO Box 578
## Gainesville, Virginia 20156
## 703.928.6246

September 23, 2007

The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue NW
Washington, DC 20001

RE:    Rene Lillicotch

My name is Sharon L. Zavalanski.  I am the certified public accountant (CPA) for
Precision Mechanical Services, Ltd. and for Rene and Peggy Lillicotch.  I have
been a licensed CPA in the Commonwealth of Virginia since 1992.  I have also
been self-employed as a CPA for individuals and small to mid-size businesses in
the northern Virginia area since 1992.

I first met Rene Lillicotch in 1997.  I had previously done tax work for his
stepson's, John W. Pearson, retail business.  After Mr. Pearson closed his retail
business in 1996, he went to work with Mr. Lillicotch at Precision Mechanical.
Since Mr. Pearson and I had worked well together for two years, he suggested
that Mr. Lillicotch switch accountants.

My first impression of Mr. Lillicotch was that he was a very soft-spoken individual.
This has held true to this day.  I have never seen Mr. Lillicotch get angry with any
employee or customer.  No matter how bad the situation may get, I have never
seen him get upset or stressed.  Mr. Lillicotch will listen to the problem and lead
his employees to the answer in a way that builds their own self-confidence.
For example, I have witnessed employees calling into the office with a
problem on the job site.  I have seen Mr. Lillicotch listen to the problem; then ask
the employee to investigate something little further while he stayed on the line.
This problem took about 30 minutes to resolve.  Not once did I see Mr. Lillicotch
get upset or yell at the employee.  And, he did not say anything after hanging up
the call.  He just got right back to work.
Mr. Lillicotch has never been one to be involved with any "office gossip."
He believes that everyone has a talent.  It's just that not everyone has the same

one. Mr. Lillicotch has never put down another employee, family member, or any other person. He always accentuated on the positive.

Mr. Lillicotch is an excellent employer and is generous to his employees. Mr. Lillicotch spends very little time in the office. Most of his time is devoted to visiting jobsites and customers.

Many times, Mr. Lillicotch will buy the employees lunch and pay for it himself. I have encouraged him to get reimbursed by the company for these expenses, but he refused and would say, "If I can't buy lunch for my employees, then what kind of boss am I?"

In the past when cash flow has been slow at Precision Mechanical, I have seen Mr. Lillicotch hold his paycheck for a few days or go without a paycheck for a week or two so that his employees would have their paychecks on time.

Mr. Lillicotch has loaned out his personal vehicle to employees to get back and forth to work because theirs were down for repairs.

I have know Mr. Lillicotch to give employees paid time off, without taking their vacation time or sick time, because of family emergencies.

I have seen where Mr. Lillicotch will delay his own vacation because an employee needed time off.

I have witnessed many times where an employee will arrive late for work, even after the trucks have all left for jobsite for the day. Mr. Lillicotch has never gotten upset; he will just put them to work in the shop.

Mr. Lillicotch is also generous in the community. When he is asked, I have never seen him turn down a donation to any local youth sports program. He believes that these children are better off playing on a field than on a street.

Mr. Lillicotch is also committed to his family. He employs several family members at Precision Mechanical. Their only complaint, he treats everyone else just like he treats them. He plays no favorites.

I respectfully ask you and the court to act lenient its sentencing of Mr. Lillicotch. His company and employees will definitely miss his daily interaction with the business. It will be almost impossible to find someone to perform his job as well as he can.

Thank you for your time and consideration to my letter.

Sincerely,

Sharon L. Zavalanski, CPA

Cc:    Herbert J. Hoelter, Chief Executive Officer
        National Center on Institutions and Alternatives

Herbert J Hoelter, Chief Executive Officer
National Center on Institutions and Alternatives
7222 Ambassador Road
Baltimore, Maryland 21244

Dear Sirs,                                                September 18, 2007

My name is Dennis A. Sellers; I am a retired Boiler Technician Chief. I retired from the
United States Navy in October 1995. I met Rene Lillicotch in March 1996 and was hired
by Precision Mechanical on March 12, 1996. I had been working for Rene for about a
year and a half when I had a heart attack. I was not allowed to return to work for six (6)
months. While I was recovering Rene called me and asked if I would come back to work
for him when the doctor released me. He said he would set me in a position that would
not be too stressful or physically demanding. I accepted his offer and went back to work
for him in October 1996. My position was Shop Foreman; I dispatched the work crews,
ordered material for jobs, assisted in payroll and helped prepare proposals for possible
new work. After about a year I was promoted to sales and job estimation. This lead to
me being very involved in the day to day operations of Precision Mechanical. I had met
most of our customers, all of which had nothing but respect for Rene and the quality of
work he provided. During this time Rene displayed nothing but the most honorable of
practices both towards his customers and employees. He always gave a little extra to the
project in hand. Demanded a high quality of workmanship and was always there for his
employees during their time of need.
In February my mother passed away in Pennsylvania, Rene gave me the time off I needed
to take care of personal business and arrangements. I left Precision Mechanical in July
2000 to work for a contractor on Quantico Marine Base. Precision Mechanical has
worked numerous jobs for my current employer. Rene's work has always been very
professional and always completed on time. Rene is a good friend, good employer and
businessman. This incident should in no way be used to judge his character or the kind of
business he conducts. I hope the courts will be lenient in his sentencing.

Sincerely,

Dennis A. Sellers

September 18, 2007


The Honorable Colleen Kollar-Kotelly
United States District Court
District of Columbia
333 Constitution Avenue, NW
Washington, DC 20001


Dear Honorable Colleen Kollar-Kotelly,


 I would like to thank you for taking the time to review this letter. My name is Jerry Miller and I have known Rene' Lillicotch for over thirty five years. The last ten years I have been employed at Precision Mechanical Service. I have known Rene' as a teenager working at a local swimming pool, then lost touch with him for a few years, and finally being employed by him since 1997. Prior to starting my employment with Precision Mechanical Service, I was a sales representative seeking business for several years. During the years Rene' and I were apart, I had heard that he started his own business in 1989, which led me to solicit his business and eventually his hiring of me.

 Rene' Lillicotch has always worked hard, been fair to everyone and family oriented. These are traits that helped me make the decision to join his company. Rene's customer base is from all walks of life, but yet he treats everyone with the same respect. Everyday I see Rene' demonstrate professionalism and integrity to his customers, as well as the employees. The employee's take the lead from these traits and carry them into the workplace.

 Family is important to Rene' as he has close relationships with his family, as well as his wife Peggy's family. He is there for friends and family whenever he is called upon to help. Family and friends are always welcome at their home. I have been to Rene' and Peggy's home on several occasions, and I have always been asked to visit on Christmas Day.

 After working with Rene' for many years and seeing his family values, devotion to his company, community good will, Rene' Lillicotch's guilty plea in Federal Court was a surprise to me. This is out of character from the person I call Rene; my boss and my friend, but I recognize the fact of this matter.

 In closing, I want to thank you once again for taking the time from your busy schedule to read this letter. I wanted to tell you about the person I know named Rene' Lillicotch.


Sincerely,

Jerry Miller

To: The Honorable Collen Kollar-Kotelly

I am writing you in reference as to the character of Mr. Rene Lillicotch.

I have worked for Rene for nine years as a Field Supervisor. In my 40 years plus of working in the plumbing and heating field, I have never met an owner that I respect as I do Mr. Rene Lillicotch.

Rene always has a smile and handshake for all his workers. Even when reprimanding someone, he does it in a calm voice, then a pat on the back. His door is always open to anyone to talk about your personal problems or needs.

Rene is a most generous and hard working employer. He is not only the best employer I have ever worked for, but I consider him my best friend as do most of his employees.

I realize this is a serious mistake he made, but one that I sincerely believe will never be repeated. I know Rene and I know in my heart, it was not done out of personal greed, but to keep his company going and his employees working.

I believe that people like Mr. Rene Lillicotch are the blue collar back bone of America.

In closing I beg, that in your decision, you take in to account the people it will effect and know that Mr. Lillicotch is truly an honest and ethical person.

Sincerely,

Dave Hankins
14007 Giles Street
Woodbridge, VA 22191