UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO.:  07-cr-169 (CKK) |
| v. : | |
| RENE LILLICOTCH, : | |
| Defendant. : | |

## GOVERNMENT'S CONSOLIDATED MEMORANDUM IN AID OF SENTENCING AND MOTION FOR DOWNWARD DEPARTURE

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter this consolidated memorandum in aid of sentencing of defendant Rene Lillicotch and motion for a downward departure under the United States Sentencing Guidelines ("USSG"), § 5K1.1.  As will be discussed below, the government believes that an application of the advisory Sentencing Guidelines set forth in ¶3 of the plea agreement (offense level total 13) is appropriate here and, based on the defendant's substantial assistance to the government, moves under Guidelines §5K1.1 for a downward departure of one level in defendant's offense level to offense level 12.

### FACTUAL BACKGROUND

This case arises as a result of the defendant's role in a conspiracy with Charles Wehausen and WOS, former project managers for PM Services, a U.S. General Services Administration ("GSA") contractor, to fraudulently inflate project costs in order to accommodate kickbacks payments to Wehausen and WOS.  The defendant, through his company Precision Mechanical ("Precision"), periodically performed mechanical work for PM Services at the Federal Cohen and Switzer Buildings in Washington, D.C on behalf of the GSA. From December, 2000, through

July, 2003, at the direction of Wehausen and WOS, the defendant created job quotations and invoices for Precision's labor and materials containing falsely inflated prices. At the same time, Wehausen and WOS caused the creation and submission of PM Services purchase orders also containing the inflated prices. These documents were sent to PM Services headquarters in Florida where they were unwittingly relied on by PM Services personnel in order to generate fraudulently inflated checks payable to Precision. After depositing the checks, the defendant made cash withdrawals of a majority of the fraud proceeds and paid them to Wehausen and WOS.[1] The defendant retained a portion of the inflated amounts for himself that he then used to make cash payments for the kickbacks. Because almost all of the kickbacks paid by the defendant were in cash, the portions received and retained by Wehausen and WOS individually are unknown. The total loss due to these activities is approximately $175, 331. Because all of the work in question was performed for the benefit of the GSA, PM Services sought and obtained reimbursement from the GSA. As a result, the GSA ultimately suffered the loss due to the scheme.

On July 25, 2007, the defendant pled guilty to a one count Information charging him with conspiracy to commit mail fraud in violation of 18 U.S.C. §371. As part of his plea agreement with the Government, the defendant agreed to cooperate in the investigation of other individuals. When the defendant was first approached by agents during the investigation of this matter, he was not candid with them. Shortly thereafter, he retained his current counsel and began his cooperation. This cooperation included a complete debriefing with Federal agents and

---

[1] In one instance in early 2002, Bahram Shahriari, at Wehausen's direction, sent the defendant a phony invoice for $20,000. The defendant issued a check for $20,000 to Shahriari who retained $4,000 and passed on the remaining $16,000 to Wehausen.

representatives of this office. At that time, the defendant provided detailed information about the conspiracy. The information supplied by the defendant concerning the mechanics of the scheme and his dealings with Wehausen was generally consistent the information supplied by the other cooperating subcontractors. This information was very helpful in further developing the Government's case against Wehausen who ultimately pled guilty in February, 2008. In addition, the defendant undertook certain cooperation efforts regarding other individuals. The government will summarize these efforts in a separate pleading being filed under seal.

## SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing Mr. Lillicotch. These factors are discussed below numbered as they are in Section 3553(a).

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant.**

### (A)    Nature and circumstances of the offense

Here, the nature and circumstances of the offense involved the defendant's multi-year continuing criminal activities to create false documents to deceive Florida officials of PM Services in order to accommodate over $175,000 in fraudulently inflated payments benefitting Wehausen, WOS and the defendant. This conduct falls squarely within the class of cases to which the applicable Sentencing Guidelines are addressed. Thus, consideration of the nature and circumstances of the offense counsel in favor of a sentence consistent with the Guidelines.

### (B) The history and characteristics of the defendant

The defendant's history and characteristics also counsel in favor of a Guidelines driven sentence. Here, the PSR reflects that the defendant was professionally, intellectually and

emotionally capable of avoiding his criminal conduct, but instead chose to engage in it intentionally and repeatedly. The PSR reflects that the defendant possesses Master's licenses in gas fitting, plumbing and mechanics. ¶ 51. In addition, since 2000, the defendant has controlled Precision, a mechanical services business employing 22 people. ¶56. The defendant, in short, was someone who should have known better than to engage in a kickback scheme involving an employee of a Federal contractor that was giving him substantial business. The defendant nevertheless subsequently accepted responsibility for his crime pre-indictment and cooperated in the government's investigation. He has also expressed genuine remorse for his illegal conduct.

> **(2)    The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the pubic from further crimes of the defendant; and (D) to provide defendant with appropriate education or vocational training.**

A Guidelines based sentence is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *See* 18 U.S.C. § 3553(a)(2). Here, as discussed above, the defendant committed a serious felony offense that spanned a period of years. The need for deterrence of others and to promote respect for the law are also important objectives in this case that can be met by an application of the Guidelines.

As to the final consideration, there does not appear to be a need in this case to adjust the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *See* 18 U.S.C. § 3553(a)(2)(D).

> **(3)  The kinds of sentences available**

The maximum term of imprisonment for this crime is 20 years, with a term of supervised release of not more than 3 years.

**(4) The sentencing range established by the United States Sentencing Guidelines**

The Supreme Court has declared that, in terms of determining an appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 U.S. 586, 596 (2007). Here, the government and the defendant stipulated in the plea agreement to a Total Adjusted Offense Level of 13 prior to consideration of substantial assistance pursuant to Sentencing Guidelines Section 5K1.1.

The government believes that offense level 12 after consideration of Section 5K1.1 is appropriate based on the fact that such a sentencing level properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 128 S. Ct. 558, 564 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Id.* at 574 (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). As stated by the Supreme Court in *Kimbrough*: "We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Id.,* (quoting *Rita v. United States*, 127 S. Ct. 2456, 2465 (2007)).

In *Rita*, the Supreme Court held that an appellate court may presume that a within-Guidelines sentence is reasonable. While this presumption does not apply before the district

court, *Rita*, 127 S. Ct. at 2465, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing Court and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." *Id.* at 2463 (emphasis in original).

Further, the advisory Guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the Guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 128 U.S. 586, 597 n.6.

**(5) Any pertinent policy statement issued by the USSC**

The government is unaware of any pertinent policy statements issued by the USSC.

**(6) The need to avoid unwarranted sentencing disparities among defendants with similar records**

As discussed above, a Guidelines sentence would help prevent such disparities between the defendant and similar defendants.

**(7) The need to provide restitution to any victims of the offense.**

The Government believes that the Court should issue an order of restitution individually against the defendant for $84,333 generally reflecting one-half of the total amount of the

fraudulently inflated payments that the defendant was involved in. [2]  This amount should be paid by the defendant to the United States.

## CONCLUSION

For the foregoing reasons, the government respectfully recommends that the defendant be sentenced in accordance with advisory Guidelines level 12, together with a three-year period of supervised release.

                                                  Respectfully submitted,
                                                  JEFFREY A. TAYLOR
                                                  United States Attorney
                                                  For the District of Columbia

By:      _____/s/_____
           JOHN D. GRIFFITH
           IA Bar #4622
           Assistant United States Attorney
           Fraud and Public Corruption Section
           555 4th Street, N.W.
           Washington, D.C.  20530
           (202) 353-2453
           john.griffith3@usdoj.gov

Dated: July 18, 2008

---

[2]  This amount also includes $6,667, reflecting one-third of the $20,000 transaction referenced in footnote 1.